ISABELLA A. LINNANE *vs.* THE AETNA BREWING COM-
PANY (THE AETNA BREWING COMPANY'S APPEAL
FROM COMPENSATION COMMISSIONER).

First Judicial District, Hartford, October Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Compensation is not awarded, under our Workmen's Compensation
Act, for death or incapacity due to disease, unless the disease be
the direct result or natural consequence of an accidental bodily
injury; in other words, a "personal injury" within the Act, must in-
volve both an accident and bodily injury as distinguished from
disease.

In the present case an employee, by working over time and by exposure
to the weather, became exhausted, and on the following day took
a severe cold which five days later developed into pneumonia,
from which he shortly thereafter died. *Held* that inasmuch as
exhaustion was not in and of itself a bodily injury, and the decedent
suffered from nothing of that nature as distinguished from disease,
the claimant was not entitled to compensation.

An accidental bodily injury may be defined as a localized abnormal con-
dition of the living body directly and contemporaneously caused
by accident; and an accident may be defined as an unlooked-for
mishap or an untoward event, or an unexpected condition.

Argued October 5th—decided December 19th, 1916.

APPEAL by the respondent from a judgment of the
Superior Court in Hartford County, *Case, J.,* affirming
the finding and award of the Compensation Commis-
sioner of the first district in favor of the claimant.
*Error and cause remanded with direction to set aside
award and enter judgment for respondent.*

The claimant's decedent was employed by the re-
spondent as one of three firemen each working eight
hours, the decedent's regular shift being from 7 a. m. to
3 p. m. On the 13th and 14th days of December, 1915,
there was the heaviest snowfall in Hartford for ten
years. Street railway traffic was interrupted, and snow

drifted in the streets to the depth of several feet. The temperature varied from 30 to 35 degrees Fahrenheit, and the wind was high. One of the respondent's three firemen was unable to report for duty on account of the storm, and the decedent was summoned at 2 a. m. on December 14th, it being understood that the respondent's engines must be kept in operation at all times, and that any of the firemen should, when required, work overtime. The decedent, without eating any breakfast, walked about three quarters of a mile to his work. The difficulties of travel at that hour were great and the decedent was out of breath and exhausted when he reached his place of employment. When he arrived there he was wet nearly to the waist and worked in his wet underclothing and stockings for twelve hours. The labor was arduous and required him at times to wheel ashes and clinkers into an open yard. When the decedent arrived home on the 14th he was exhausted and had no appetite. On the 15th he developed a severe cold and cough, but continued to work, though ill, during the remainder of the week. On December 20th pneumonia developed from which he died on the 22d. The decedent was forty-two years of age, six feet tall, weighed two hundred and forty pounds, and was physically powerful.

The testimony of the medical witnesses is summarized in the finding as follows: "They agree that pneumonia is caused by the pneumo-coccus germ, which is inhaled and present in a considerable percentage of persons in apparently normal health. The aforesaid physicians agree that the deceased's exhausting walk from his home immediately after arising in the middle of the night, his arduous work for twelve hours, following sooner than ordinarily upon his preceding shift, his working in wet garments, and the frequent changes of temperature between the boiler-room where he often

stood before the open doors of the furnace and the open air where the ashes and clinkers were dumped, created conditions in the system of the deceased which resulted in the pneumonia from which he died. The pathology of this disorder is that when unusual conditions arise in the human system decreasing its powers of resistance the pneumo-coccus germ becomes active.

"The physicians also agreed, and it is hereby found, that in view of the circumstances hereinbefore described the deceased was subjected to conditions more conducive to the development of pneumonia than ordinarily prevailed in the community at the same time in the case of the general run of citizens."

The Commissioner found that the unusual exposure and exhaustion to which the decedent was subjected on December 14th was a proximate contributory cause of the pneumonia resulting in death; and held that "said exposure and exhaustion, taking into account all the circumstances under which they were experienced, constitute within the meaning of the Act a personal injury arising out of and in the course of the employment."

Compensation was awarded on this basis and the respondent employer appealed to the Superior Court, which dismissed the appeal and sustained the award.

*Warren B. Johnson* and *Leonard J. Collins,* for the appellant (respondent).

*Charles Welles Gross,* for the appellee (claimant).

BEACH, J. The claimant's brief correctly states that this case presents two questions of law: first, whether the decedent sustained a "personal injury" within the meaning of the statute; the second, whether it arose "out of and in the course of his employment."

In our opinion the first question is decisive of the case, and it must be answered in the light of two recent

decisions of this court. *Miller* v. *American Steel & Wire Co.*, 90 Conn. 349, 97 Atl. 345, and *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 97 Atl. 320. The *Miller* case decides that our Compensation Act does not award compensation for death or incapacity due to disease, unless the disease is the direct result or natural consequence of an accidental bodily injury. This decision covers in principle not only occupational diseases arising from exposure to the normal condition of the employment, but also diseases arising from accidental exposure to abnormal conditions of employment; and that it was so intended is obvious from the general tenor of the opinion as well as from several specific statements to that effect, of which we quote the following from page 351: "The record, therefore, does not present the question whether our Workmen's Compensation Act gives compensation for death or incapacity resulting from disease caused by accidental injury. It presents the very different question whether our compensation system includes occupational diseases as well as industrial accidents. More specifically, the question is whether the words 'personal injury . . . arising out of and in the course of his employment,' in our Act, were intended by the General Assembly to cover disease arising out of and in the course of the employment." And again, on page 360, it said: "As already pointed out, the Act, because of its entire omission to refer to the subject, must include all diseases arising out of and in the course of the employment, or none. And if it was not intended to cover the typical occupational disease, it was clearly not intended to cover any except such as are the direct result or natural consequence of an accidental injury."

In the *Larke* case it was held that a frost-bite was a personal injury within the Act, and that compensation was properly awarded to the dependent claimant in

that case for the death of her husband from erysipelas which was found to be a direct result of the frost-bite. In that case it was said that the term personal injury, when confined to injuries of an accidental origin, "must be held to include any form of bodily harm or incapacity, whether arising by direct contact, or lesion caused by external violence or physical force, or untoward mishap."

Taking the two cases together, their effect is that a "personal injury" within the meaning of the Act involves both an accident and a bodily injury, as distinguished from a disease.

As was pointed out in the *Miller* case, the phrase "personal injury" is used in the Act in its popular sense of an accidental bodily injury, and unless the *Miller* case be ignored and all practical distinction between bodily injury and disease abandoned, we must recognize the fact that in common speech and understanding a bodily injury, whether manifest to the senses at the time it is sustained, or subsequently revealed by functional disturbance, is always assignable to some definite part or organ of the body, and when caused by accident is always sustained at the time of the accident or at least during the time within which the accidental condition is operative. An accidental bodily injury may, therefore, be defined as a localized abnormal condition of the living body directly and contemporaneously caused by accident; and an accident may be defined as an unlooked-for mishap or an untoward event or condition not expected. The concurrence of accident and injury is a condition precedent to the right to compensation.

On this record, the unusual weather conditions, or the consequent untimely and prolonged hours of labor, or both, may be said to supply the element of an untoward and unexpected condition of the employment. The direct and contemporaneous result of this acci-

dental condition was exhaustion, and the record, therefore, shows that the decedent was accidentally exhausted on December 14th. It is clear, however, that exhaustion, although accidentally incurred, is not in and of itself a bodily injury, either according to common speech and understanding or according to the above definition; for it may or may not overcome the elastic resistance of the system and may or may not result either in a bodily injury or in a disease.

When, as in this case, the consequence of the exhaustion manifests itself subsequently in the form of a disease which does not necessarily connote an antecedent bodily injury, the question still remains open whether such disease is or is not the result of an intervening bodily injury contemporaneously caused by the exhaustion. In every such case the burden of proof is on the claimant, and there is no finding on this record that the decedent's pneumonia was caused by a personal injury sustained on December 14th; for, as already pointed out, exhaustion is not a personal injury.

It is found that at one time on that day the decedent was out of breath and exhausted, and at another that he was exhausted and had no appetite; and it is also found that his exhaustion was a contributing proximate cause of the pneumonia. We are asked to infer or assume from this, that the exposure and exhaustion to which the decedent was subjected on December 14th, contemporaneously caused an abnormal condition of his lungs comparable to the frost-bite in the *Larke* case. We cannot do so, not only because the subject is outside of the domain of common knowledge, but also because the expert evidence summarized in the finding and quoted in the statement of facts, indicates quite plainly that the contemporaneous consequence of the decedent's exhaustion was not a localized injury, but a general or systemic condition of weakened re-

sistance to disease from which pneumonia developed in the ordinary course and without the intervention of a bodily injury. For this reason the award cannot be sustained.

The Massachusetts and British cases cited by the claimant are not quite in point, because in both of those jurisdictions the principle of compensation for disease arising from the employment is accepted; and it will be found that most, if not all, of the British cases usually cited to the point that a disease arising from accident is a personal injury by accident within the meaning of their Act, were decided after the passage of the Industrial Diseases Act in 1906, which necessarily enlarged the area within which doubtful cases might be held to be within the reason and spirit of their legislation.

Our Act, however, deals exclusively with industrial accidents and not with occupational diseases; and for reasons given at length in the *Miller* case and in this opinion, we are not at liberty to construe the Act so as to include diseases which are caused by accident without the intervention of a bodily injury. To construe the Act as denying compensation in cases of occupational disease, and yet granting it in cases, for example, of influenza from working near a window inadvertently left open, would impute to the General Assembly the intention to make a distinction which appears to us to be unjust and inconsistent with the principles underlying all legislation on the subject of workingmen's compensation.

There is error and the case is remanded with directions to set aside the award of the Commissioner and enter judgment for the respondent.

In this opinion the other judges concurred, except WHEELER, J., who dissented.