MARIA MARCELLINO GALLUZZO *vs.* THE STATE OF CONNECTICUT ET AL.

Third Judicial District, Bridgeport, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 30th, 1929—decided March 31st, 1930.

*George E. Beers* and *Frederick H. Harris,* with whom, on the brief, was *Alfred B. Aubrey,* for the appellant (plaintiff).

*Harry M. French,* with whom, on the brief was *Daniel L. O'Neill,* for the appellee (defendant).

HAINES, J. The plaintiff claims to recover under the provisions of the Workmen's Compensation Act, for the death of her husband, Vincenzo Galluzzo, who was an employee of the State Highway Department, and died of pneumonia March 13th, 1928. The commissioner denied compensation, and upon appeal to the Superior Court, his conclusion was sustained and the appeal dismissed, and the case comes before us on the appeal of the plaintiff from that judgment.

The question before the commissioner and the Superior Court was whether the deceased had suffered an injury which was compensable. In this court the contention is made for the first time in this case, that Chapter 307 of the Public Acts of 1927 and the Validating Act of the Special Session of 1929, are unconstitutional and of no effect. The relevant portion of the first named Act reads as follows: "A personal injury shall not be deemed to arise out of the employment unless causally traceable to the employment other than through weakened resistance or lowered vitality." Public Acts of 1927, Chap. 307, § 7. We refer to this claim before taking up the case upon its merits. It is discussed at length by counsel for the claimant, but opposing counsel refrained from doing so on the ground that the claim was not made upon the trial and therefore had no place in this appeal. We have recently had occasion to pass upon the question thus raised in the case of *Rindge* v. *Holbrook*, 111 Conn. 72, 149 Atl. 231, and we sustain the position of counsel for the defendants on the grounds therein stated.

We confine our discussion, therefore, to the claims made in the hearings before the commissioner and in the Superior Court, first considering the requested changes in the finding of facts in the light of the evidence, all of which is certified of record. The evidence

justifies part of the requested addition to paragraph nine of the finding, as follows: "The deceased was a very regular and energetic employee, one of the best working for his foreman, and had lost but two or three days during the five-year-period of his employment, and had performed every arduous duty assigned to him of whatever nature it may have been." "If the worker were warmly dressed, he would perspire a little."

The evidence also justifies the requested addition to paragraph eleven and the following addition to paragraph fourteen: "The deceased complained of his back and legs being sore and he was not inclined to talk. These conditions were not observed when he began work that morning."

The finding as amended shows that the deceased was in the employ of the defendant State Highway Department on March 5th, 1928, upon which day he reported for work as usual and nothing abnormal or unusual in his condition was noticed by fellow employees. He was a regular and energetic worker and had lost but two or three days' time during his five years' employment, and performed all duties assigned him. On this morning he and two other men shoveled sand into a truck which was backed into a sand pit in South Meriden. This pit was twelve or fifteen feet below the surface of the ground and was a sheltered place in which to work. The day was clear and the temperature in the pit was higher than outside, where it varied from 38 to 21 degrees in New Haven with a mean of 30 degrees, and in Hartford from 37 to 20 degrees with a mean of 28 degrees. The men would sometimes perspire a little while working in the pit. After loading the truck, the three men, one of them driving, rode in the cab of the truck to a point north of Meriden on the Berlin road, there being warmth and general comfort in the cab. The deceased and a fellow

employee then stood on the back of the truck in the open air and shoveled the sand onto the road at different points where there were frost breaks, and thereafter rode in the cab on the return to the sand pit. In this manner, several trips were made that day. The three men had dinner in the cab at noon while on the Berlin road, at which time the deceased complained of not feeling well and did not eat, and his eyes were bloodshot. At three that afternoon the foreman noticed that the deceased was not working with his usual energy, and about half past three, when the truck was being again loaded, the deceased did not assist, and upon this being reported to the foreman, he took him home in an automobile. At this time he was obviously ill, appeared to be cold and said his back and legs were sore, but was disinclined to talk. A physician was called the following morning—March 6th—who found "a beginning pneumonia" which progressed and caused his death on the 13th.

The contention of the claimant was that the pneumonia was caused by the exposure to which the deceased was subjected on the previous day while working on his job and therefore arose out of and in the course of the employment. The commissioner decided adversely to this claim and denied compensation saying that if the pneumonia were traceable in any degree to the employment, it could only be so traced through weakened resistance and lowered vitality. It therefore came within the prohibition of Chapter 307, § 7, of the Public Acts of 1927.

The conclusions of the commissioner were unsuccessfully attacked upon the appeal to the Superior Court and are again contested before us on this appeal, on the ground that they are not only inconsistent with the subordinate facts but unreasonable and unsound.

The facts of this case are in very close analogy to

those in *Linnane* v. *Aetna Brewing Co.*, 91 Conn. 158, 99 Atl. 507, decided in 1916, and *Dupre* v. *Atlantic Refining Co.*, 98 Conn. 646, 120 Atl. 288, decided in 1923. In all three cases, the employee died of pneumonia, and all three present the picture of an apparently strong and vigorous man, doing arduous work under weather and other conditions more or less abnormal and severe, the necessary tendency of which was to reduce vitality and lessen the resistance of the man to the development of disease.

First, it should be noted that pneumonia is not an "occupational disease" within the meaning of the Act, for the latter is "a disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such." General Statutes, § 5388, amended by Public Acts of 1919, Chap. 142, § 18, by Public Acts of 1921, Chap. 306, § 11, and Public Acts of 1927, Chap. 307, § 7. Since compensation is now given only for personal injury and occupational disease, the claimant's right to compensation in this case must therefore rest upon proof that the deceased suffered a "personal injury," and this must be "only accidental injury which may be definitely located as to the time when and the place where the accident occurred." Public Acts of 1927, Chap. 307, §§ 2 and 7.

The *Dupre* case was decided in 1923 after an amendment of the Act to the effect that it should be no bar to compensation that the injury could not be traced to a definite occurrence which could be located in point of time and place. Public Acts of 1919, Chap. 142, § 1.

In the *Linnane* decision, we had said that "personal injury," as that term was then used in the Act, was practically synonymous with "accidental bodily injury," and we held the latter term to mean "a localized abnormal condition of the living body directly

and contemporaneously caused by accident," and added that "an accident may be defined as an unlooked-for mishap or an untoward event or condition not expected. The concurrence of accident and injury is a condition precedent to the right to compensation." (p. 162). The foregoing definition of "accident" may sometimes be satisfied by proof of exposure or other severe and unusual working conditions.

When the *Dupre* case afterward arose we held that the effect of the 1919 amendment of the statute was to eliminate the words "localized" and "contemporaneously" from the definition of "injury" which appeared in the *Linnane* decision, and to so enlarge that definition that it was no longer necessary to trace the injury to a definite occurrence which could be located in point of time and place.

Thereafter, in 1925, we decided the case of *De la Pena* v. *Jackson Stone Co.*, 103 Conn. 93, 130 Atl. 89. We therein held that the effect of the 1919 amendment was to permit compensation not only for occupational disease, but for any disease arising out of and in the course of the employment and that it required that "personal injury" be defined simply as "an abnormal condition of the body." We therefore held that "a compensable personal injury is an abnormal condition of a living body which arises out of and in the course of the employment and produces an incapacity to work for the requisite statutory period. It need not be traced to a definite happening or event. It may be caused by accident or disease, and includes diseases peculiar to an occupation except those of a 'contagious, communicable or mental nature.' The happening or event includes the entire transaction to which the injury is traced, not only the operative causes but their effect on the body of the injured person." In that case there was exposure which resulted

in influenza and pneumonia. We said: "The conditions which comprise the occurrence, that is, the happening or event in this case, comprise all of the exposure to which the deceased employee was subjected, together with their effect upon his body, being the entire transaction to which the influenza is traced." We adopted a similar line of reasoning in the case of *Kovaliski* v. *Collins Co.*, 102 Conn. 6, 128 Atl. 288, decided earlier in 1925.

In the *Linnane* case we said: "We are asked to infer or assume from this, that the exposure and exhaustion to which the decedent was subjected on December 14th, contemporaneously caused an abnormal condition of his lungs comparable to the frost-bite in the *Larke* case [90 Conn. 303, 97 Atl. 320]. We cannot do so, not only because the subject is outside the domain of common knowledge, but also because the expert evidence summarized in the finding and quoted in the statement of facts, indicates quite plainly that the contemporaneous consequence of the decedent's exhaustion was not a localized injury, but a general or systemic condition of weakened resistance to disease from which pneumonia developed in the ordinary course and without the intervention of a bodily injury." *Linnane* v. *Aetna Brewing Co.*, 91 Conn. 158, 163, 164, 99 Atl. 507.

The amendment of 1927 from which we have quoted has again placed the definition of compensable injury where it was when the *Linnane* case was decided, and the present case must rest upon the reasoning of that case rather than that in the *Dupre, Kovaliski* and *De la Pena* decisions.

We now turn to the present case. Pneumonia is " 'caused by the pneumococcus germ, which is inhaled and present in a considerable percentage of persons in apparently normal health.' " *Linnane* v. *Aetna Brew-*

*ing Co.*, at page 159. The finding in the present case also says: "Pneumonia is caused by a germ which may be resident in the human system and remains innocuous until through a cold, traumatism, exhaustion, exposure or other causes the resistance of the respiratory tract to infection is lessened. When such lessened resistance occurs, the germ becomes active and the disease sets in."

We discover no essential conflict of opinion in the testimony of the three medical experts in this case, but in so far as it may be thought to exist, it is obvious that the commissioner accepted, as he had a right to do, the views of Dr. Gibson, the superintendent of the Undercliff Sanitarium, a specialist in pulmonary diseases. He concluded his testimony by saying, "I would be rather skeptical that exposure such as is described here would result so quickly in the establishment of pneumonia." Dr. Griswold concluded that the exposure to which the deceased was subjected might "bring about a condition that would allow the direct cause of pneumonia to develop . . . the lowering of the man's resistance or the resistance of his tissues against the invasion of the pneumococcus," and that the weakened resistance and lowered vitality would "give the germ a chance to work out." Dr. Stoddard thought the exposure was "a predisposing cause" to the invasion of the disease, and when asked at the conclusion of his testimony, what causes the pneumococcus to light up, replied, "Anything that will have a tendency to lower the resistance of the person involved."

We interpret the concensus of these medical views to be that a lessened vitality and an increased susceptibility to infection could have been the direct and contemporaneous result of the exposure; that this lowered resistance permitted the pneumococcus germ to gain a foothold and thereafter resulted in the disease

of pneumonia. "The contemporaneous consequences of the decedent's exhaustion was not a localized injury, but a general or systemic condition of weakened resistance to disease, from which pneumonia developed in the ordinary course and without the intervention of a localized injury contemporaneously caused by the conditions of his work." *Dupre* v. *Atlantic Refining Co., supra,* at pages 650, 651.

It appears quite conclusively that the pneumonia was not a contemporaneous result of the exposure, and that the only contemporaneous result which could have been caused, was a weakened resistance and a lowered vitality.

We hold, therefore, that the conclusion of the commissioner that the pneumonia in this case "could only be traced through weakened resistance and lowered vitality" of the deceased, was a sound and reasonable one.

The statute of 1927 forbids compensation where the injury is causally traceable only "through weakened resistance or lowered vitality," and we must concur with the commissioner and the trial court in holding that this is not a case of compensable injury.

There is no error.

In this opinion the other judges concurred.