## Louis R. King *vs.* The Travelers Insurance Company.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

(1)

Argued March 2d—decided May 12th, 1937.

*Thomas R. Robinson,* with whom was *Daniel L. O'Neill,* for the appellant (defendant).

*George N. Finkelstone,* with whom, on the brief, was *Lawrence S. Finkelstone,* for the appellee (plaintiff).

AVERY, J.   The plaintiff brought this action to recover for partial disability under three policies of accident insurance issued by the defendant and covering the plaintiff as a dentist.   The case was tried to the jury and a verdict returned in favor of the plaintiff.   The defendant filed a motion to set aside the verdict as against the weight of the evidence and contrary to the law, and from a denial of this motion has appealed.   The only question raised upon the appeal is the propriety of the court's action in denying this motion.

A motion to set aside a verdict on the ground that

it is against the weight of the evidence is not proper. It is the function of the trial court or the jury to weigh the evidence and this court upon appeal will not set aside a verdict upon the ground that it was against the weight of the evidence. *Laukaitis* v. *Klikna,* 104 Conn. 355, 356, 132 Atl. 913; *Richard* v. *New York, N. H. & H. R. Co.,* 104 Conn. 229, 132 Atl. 451. The only question which can be raised by such a motion is the legal sufficiency of the evidence to support the verdict. *Wells* v. *Radville,* 112 Conn. 459, 467, 153 Atl. 154.

From an examination of the evidence certified, it appears that the jury might reasonably have found the following facts: The plaintiff was a dental surgeon, practicing his profession in Bridgeport, and specializing in the extraction of teeth. The defendant, a Connecticut corporation, issued three policies of accident insurance insuring the plaintiff, by occupation, a dentist. Under one of these policies, he was insured "against loss resulting from Bodily Injuries, effected directly and independently of all other causes, through accidental means. . . ." Under the other two policies, he was insured "against loss resulting from Bodily Injuries, effected directly and independently of all other causes, through External, Violent and Accidental means. . . ." Each of the policies contained a provision covering partial disability in the following language: "Or, if such injuries, independently and exclusively of all other causes, shall wholly and continuously disable the Insured from date of accident from performing one or more important daily duties pertaining to his occupation, or for like continuous disability following total loss of time, the Company will pay during the period of such disability, but not exceeding twenty-six consecutive weeks, a weekly indemnity. . . ." On or about April 8th, 1936,

and while the policies were in full force, ulcers appeared on the index fingers of both of plaintiff's hands. These ulcers resulted from the breaking down of the tissue of the fingers as the result of long and continuous application of X-rays used in the treatment of his patients. Since that date, the insured has been continuously disabled from performing one or more important daily duties pertaining to his occupation. It was conceded at the trial that the plaintiff was entitled to recover the sum of $1235 in the event that the jury found in his favor. It was the contention of the defendant, however, at the trial and on this appeal that the jury were not justified upon the evidence in finding that the injuries received by the plaintiff were effected through accidental means within the coverage of the policy; and, further, that they did not partially disable the insured from the date of the accident.

The contracts in this case were made in Connecticut between a Connecticut corporation and a dentist, residing and practicing his profession in Bridgeport in this State. Under familiar principles, they are to be construed, therefore, as Connecticut contracts in accordance with the law of this State. It is here a settled rule that in the construction of insurance policies " 'when the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss must, in preference, be adopted.' " *Dickinson* v. *Maryland Casualty Co.*, 101 Conn. 369, 379, 125 Atl. 866; *Elberton Cotton Mills, Inc.* v. *Indemnity Ins. Co.*, 108 Conn. 707, 710, 145 Atl. 33; *Tomasetti* v. *Maryland Casualty Co.*, 117 Conn. 505, 507, 508, 169 Atl. 54. It is a well settled rule in the construction of insurance policies, that when a policy is " 'so framed as to leave room for two constructions, the words used should be interpreted most strongly against the insurer. This exception rests

upon the ground that the company's attorneys, officers or agents prepared the policy, and it is its language that must be interpreted.'" *Rinaldi* v. *Prudential Ins. Co.,* 118 Conn. 419, 423, 172 Atl. 777.

The insured used the X-ray machine for the purpose of diagnosis in his profession, and was skilled in the use of the apparatus. The jury might well have found that what caused the ulceration to appear upon his forefingers was exposure of these fingers to the X-ray a number of times, the cumulative effect of which was to cause the breaking down of the tissue and the appearance of the ulcers. The jury might also have found that there was no intention on the part of the insured in his use of the machine to expose himself to the X-ray to such a degree as to produce injurious consequences. Although the insured used the machine in his business, it was for the jury to determine whether the resulting injury was accidental in the sense of something unexpectedly taking place— not according to the usual course of things—or whether the result was one such as usually follows from ordinary means voluntarily employed. This was a question of fact. *United States Mutual Accident Asso.* v. *Barry,* 131 U. S. 100, 9 Sup. Ct. 755, 762; 5 Couch, Insurance Law, § 1137.

The defendant cites the definition we gave in *Linnane* v. *Aetna Brewing Co.,* 91 Conn. 158, 99 Atl. 507, where we said (p. 162): "An accidental bodily injury may, therefore, be defined as a localized abnormal condition of the living body directly and contemporaneously caused by accident; and an accident may be defined as an unlooked-for mishap or an untoward event or condition not expected." In that case we were discussing recovery under the Workmen's Compensation Act, and if that definition is ever applicable in its entirety to a recovery upon an insurance policy

covering loss due to accident it does not apply where, as in the situation before us, the insurance company had defined in carefully chosen words the loss against which it insured; words evidently intended to state with all reasonable precision the loss intended to be covered. The policies before us insure against loss resulting from "bodily injuries effected directly and independently of all other causes through accidental means" or "through external, violent and accidental means." Such a policy should be construed so as to give to the insured the protection which, attributing to the language its ordinary and natural meaning, he reasonably assumes that it affords. *Porto* v. *Metropolitan Life Ins. Co.*, 120 Conn. 196, 200, 180 Atl. 289; *Fogarty* v. *Fidelity & Casualty Co.*, 120 Conn. 296, 303, 180 Atl. 458. By the plain language of these policies as they would reasonably be understood by the insured, he was entitled to recover for any loss resulting from bodily injury with the sole qualification that the injury be effected through accidental means or external, violent and accidental means.

The defendant does not claim that the burning by the X-ray machine which the plaintiff suffered would not fulfil the requirement that the accidental means be external and violent. The ulcerations upon the plaintiff's fingers certainly constituted a bodily injury; that is, in the language of the *Linnane* case, "a localized abnormal condition of the living body." And such disability as the plaintiff suffered might well have been found to be due to the ulcerations. Whatever conditions preceded them are not of consequence except as regards the policy requirements that they came about through accidental means. *Fogarty* v. *Fidelity & Casualty Co.*, supra, p. 301. The exposure of the plaintiff's fingers was an accident within the definition in the *Linnane* case; it was "an untoward

event or condition not expected," just as much as the exposure in that case was stated to be an accident resulting in exhaustion, or the weather conditions which produced the frost bite in *Larke* v. *John Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 97 Atl. 320. See also *Hood & Sons* v. *Maryland Casualty Co.*, 206 Mass. 223, 92 N. E. 329; *Aetna Life Ins. Co.* v. *Portland Gas & Coke Co.*, 229 Fed. 552; *Rissman & Son* v. *Industrial Commission*, 323 Ill. 459, 466, 154 N. E. 203; *Victory Sparkler & Specialty Co.* v. *Francks*, 147 Md. 368, 382, 128 Atl. 635; *Vennen* v. *New Dells Lumber Co.*, 161 Wis. 370, 374, 154 N. W. 640. The jury might reasonably have found that there was a causal connection between the X-ray burns and the ulcerations, and that the plaintiff suffered a loss resulting from bodily injuries effected directly and independently of all other causes through accidental means, or, as stated in some of the policies, through external, violent and accidental means.

The jury might reasonably have further found that the amount of tolerance to exposure to the X-ray without injurious effect varies with the individual. Until the breaking down of the tissues appeared, it was not perceptible that there had been an overexposure or too frequent exposures. The unexpected and unanticipated event in this case was not the exposure to the X-ray, but the over-dose of it producing the ulcers on the plaintiff's fingers, which resulted from almost daily use, too long continued. The jury could reasonably have found that after the continued day by day exposure of his fingers to the destructive force of the X-ray at first made them sore from the incipient over-dose, the actual breakdown of tissue evidenced by ulcers, which ensued a few days later as a cumulative result following the subsequent exposures, marked the date of the accident. There was

also evidence from which the jury could have determined that there was continuous partial disability from that date.

The defendant places much reliance upon the case of *Southard* v. *Railway Passengers Assurance Co.,* 34 Conn. 574. This was a decision of Judge Shipman of the United States District Court sitting as a referee. In this case, it was decided that the plaintiff, who voluntarily jumped from a train and ran thereafter a considerable distance and some time later was found to be suffering from a rupture, did not suffer an accidental injury in that he did exactly what he intended to do and his conduct was calculated to produce upon him the effect which actually resulted. Some of the reasoning of this case has been seriously questioned by very eminent authority. *United States Mutual Accident Asso.* v. *Barry,* supra. However that may be, the instant case was tried before the jury, and as there is evidence in the record to support their verdict no basis exists for interference with their conclusion by this court upon appeal.

There is no error.

In this opinion BANKS and BROWN, Js., concurred.

MALTBIE, C. J. (dissenting). I agree that the ulceration of the plaintiff's fingers was a bodily injury effected through accidental means within the coverage of the policies in question. I also agree with the proposition upon which the majority opinion is, as I understand it, based, that a recovery for losses due to the injury would be proper under the policies only if a disability from the injury began at the date of the accident, in this case the over-exposure of the plaintiff's fingers to the X-rays. I am not able to agree that, upon the evidence, the jury could reasonably

have reached the conclusion that the injury was the result of a continuous process of over-exposure extending to the time when disability occurred. The farthest the evidence, reasonably construed, went, was to afford a basis for a finding that there had been over-exposure at some particular time or times previous to the manifestation of any injury to the fingers, leaving entirely uncertain how long before the injury the exposure or exposures had occurred. The evidence did not afford a basis for a reasonable conclusion that the injury produced disability from the date of the accident.

In this opinion HINMAN, J., concurred.