GEORGE T. CULHANE *v.* THE AETNA LIFE INSURANCE COMPANY.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

238

Argued March 2d—decided April 8th, 1938.

*Maurice T. Healey, Jr.,* and *Edward T. Carmody,* for the appellant (defendant).

*William K. Lawlor,* for the appellee (plaintiff).

AVERY, J. The plaintiff was insured by the defendant under a policy of accident insurance. He brought suit for disabilities which he had suffered which he claimed were covered by the terms of the policy. The trial court found that the plaintiff's disabilities were within the coverage of the policy and rendered judgment for the plaintiff to recover, and the defendant has appealed. The question in the case is whether the trial court was correct in deciding that the plaintiff's disabilities were within the terms of the policy. It is not questioned that the plaintiff paid the premiums and complied with all the provisions of the contract. The policy provided that the applicant was insured, "against loss resulting directly and independently of all other causes, from bodily

injuries effected during the term of this policy solely through accidental means." The contract provided for compensation for total disability, "if such injuries, directly and independently of all other causes, shall wholly and continuously disable the insured from the date of accident and prevent him from performing any and every duty pertaining to his occupation," and for partial disability, "if such injuries, directly and independently of all other causes, shall continuously disable the insured from the date of accident and prevent him from performing one or more important daily duties pertaining to his occupation." It was expressly provided that: "This insurance shall not cover accident, injury, disability, death or other loss caused directly or indirectly, wholly or partly, (1) by bodily or mental infirmity, (2) by ptomaines, (3) by bacterial infections (except pyogenic infections which shall occur simultaneously with and through an acci-dental cut or wound), (4) by any other kind of disease."

The trial court found the facts as follows: On December 19th, 1935, at about 6.30 p. m., while the plaintiff was in his office in the business district of Waterbury, he received a telephone call that his wife had been in an automobile accident. He drove from his office to his home on Euclid Avenue and upon arriving proceeded on foot to the corner of Yates and Cables Avenues, a distance of about one hundred and fifty yards. Upon arriving at the corner he found his wife, a woman weighing one hundred and sixty pounds, sitting on the ground, screaming and hysterical. When he attempted to lift and support her, she struggled and slipped from his grasp and in his exertion and anxiety to regain his grasp on her he slipped on some small stones and fell, and then felt a sharp pain in his left chest in the region of his heart.

He was taken to his home in an automobile and shortly after arrival there was examined by a physician and found to be in extreme shock; his pulse was hardly perceptible; he had a marked pallor, was perspiring profusely and complaining of extreme pain radiating through his left arm. On the following day he was removed to a hospital where he began to have lung involvements due to faulty circulation and developed a hyperstatic pneumonia. He remained in the hospital about three weeks and was then removed to his home, was totally incapacitated until July 1st, 1936, and partially incapacitated until September 1st, 1936. At the time of trial he had recovered from his heart ailment. The plaintiff was a large man, forty-two years of age, weighing two hundred forty-two pounds, and previous to the accident was in good health. He had never had any pains in his heart or suffered any attack or any pains in his arms or in his chest. He had been physically examined by a physician on September 27th and 30th, previous to the accident. At that time a stethoscope examination disclosed no abnormal condition of his heart or deformity or ailment, and he was in good health and normal with the exception of being thirty-five pounds overweight. He did not run to the scene of the accident but walked, and while so doing did not suffer any pain in his heart or elsewhere.

The trial court concluded that the plaintiff's injuries were due to a coronary occlusion caused by a spasm brought on by the means he employed in picking up and supporting his wife, that the injuries came about wholly "through accidental means" and that they were not caused indirectly or partly by reason of any pre-existing disease of the coronary arteries. Two medical experts called by the plaintiff gave testimony directly supporting that conclusion. It is true that medical

experts called by the defendant were of the opinion that the plaintiff's condition was due at least in part to a diseased condition of the heart. In view of this conflict in the medical testimony, the conclusion of the trial court must stand. *Stier* v. *Derby,* 119 Conn. 44, 51, 174 Atl. 332; *Senzamici* v. *Waterbury Castings Co.,* 115 Conn. 446, 451, 161 Atl. 860; *Jadovich* v. *Collins Co.,* 109 Conn. 62, 66, 145 Atl. 25; *Driscoll* v. *Jewell Belting Co.,* 96 Conn. 295, 299, 114 Atl. 109.

The defendant seeks numerous additions to the finding and also attacks certain of those made by the trial court, but we can make no corrections which would materially affect the conclusion of the trial court. In so far as the additions sought state operative facts, the testimony as to them was conflicting. Most of the additions sought consist of statements of fact as to the various causes of coronary occlusion other than the spasm found by the trial court to have been the cause in this case, and as to the relative proportion of cases due to these causes. Such facts, so far as accepted by the trial court, had their place in the case as bearing upon the weight to be given to the direct testimony of the medical experts called by the plaintiff, but they exhausted themselves when they had been considered by the trial court for that purpose. They were evidential facts which would have no place in the finding. The trial court has inserted in the finding several paragraphs which concern the qualifications and disinterestedness of the experts who testified and summarizing their testimony in certain respects. These findings, of evidence and evidential facts, have no proper place in the finding and we do not need to consider the attacks made upon some of them by the defendant.

In *King* v. *Travelers Ins. Co.,* 123 Conn. 1, 5, 192 Atl. 311, the plaintiff, a dentist, was insured against

loss resulting from bodily injuries, effected directly and independently of all other causes, "through accidental means" or "through external, violent and accidental means." While the policies were in force ulcers appeared on the index fingers of both of plaintiff's hands. These ulcers resulted from the breaking down of the tissues of the fingers as the result of long and continuous application of X-rays used in the treatment of patients. We held that the jury might reasonably have found that the ulceration of plaintiff's fingers was a bodily injury effected through accidental means within the coverage of the policy. In *Rinaldi v. Prudential Ins. Co.*, 118 Conn. 419, 424, 172 Atl. 777, the insurance policy provided for an accidental death benefit as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental causes and that no accidental death benefit should be payable where death resulted directly or indirectly from disease in any form. The deceased, who was a sufferer from myocarditis, while operating a saw was struck by a piece of flying wood upon his right malar bone. Shortly thereafter he died. We held that the trial court was not in error in concluding that the death occurred independently of the disease and solely from accidental causes within the terms of the policies.

*United States Mutual Accident Asso. v. Barry*, 131 U. S. 100, 9 Sup. Ct. 755, 762, is a case often referred to upon this subject. The factual situation in that case is less favorable to the plaintiff than that disclosed in the case at bar. In that case Barry, in leaving a railway station platform, jumped to the ground below, a distance of four or five feet. His act was voluntary but in some way not shown by any direct proof, he sustained a jar, which, it was claimed, caused an injury to his intestines resulting in his death.

There was no evidence by any witness that he was seen to slip or fall or that he alighted in any other manner than he intended, but it was held that the jury were at liberty to find that by some unexpected or unforeseen or involuntary movement of his body in his descent from the platform to the ground his injury was caused. The Supreme Court of the United States approved an instruction to the jury to the effect that if Barry jumped and alighted just as he intended and nothing unforeseen, unexpected or involuntary occurred affecting his movement or causing him to strike the ground in any different way than he intended, then his injury was not caused by accidental means; but if "there occurred from any cause, any unforeseen or involuntary movement, turn or strain of the body which brought about the alleged injury, or if there occurred any unforeseen circumstance which interfered with or changed such a downward movement as he intended to make, or as it would be natural to expect under such circumstances, . . . and injury thereby resulted, then the injury would be attributable to accidental means." In this case the court referred to *Southard* v. *Railway Passengers Assurance Co.*, 34 Conn. 574, a case relied upon by the defendant both in the *Barry* case and the case at bar, and said that if there was anything in that decision inconsistent with the conclusions reached in the *Barry* case it must dissent from those views.

In *Lickleider* v. *Iowa State Traveling Men's Asso.*, 184 Iowa 423, 166 N. W. 363, 3 A. L. R. 1295, 1299, the deceased, who was suffering from arteriosclerosis, was removing a casing from an automobile tire when it came off suddenly with a snap causing him to slip and stagger backward. He immediately turned pale, complained of being very ill, put his hand to his head and lay down on the ground. He died in about an

hour. It was held that the jury might have found that the death was wholly due to accidental means within the terms of the policy insuring against bodily injury occurring through external, violent and accidental means and resulting independently of all other causes in death, and exempting the insurer from liability in case the death resulted "wholly or partially, directly or indirectly, from disease or body infirmity or from voluntary overexertion." In *McGlinchey* v. *Fidelity & Casualty Co.*, 80 Me. 251, 14 Atl. 13, 14, while the insured was driving, his horse became frightened and ran a considerable distance before it could be brought under control. There was no collision, the carriage was not upset or anyone thrown therefrom. Immediately thereafter the insured experienced great sickness and pain and going directly to his house died in about an hour. He was in good health on the morning before and there was no suggestion that he was not a person generally sound and of strong constitution. It was held that the death was caused "by bodily injuries effected through external, violent and accidental means."

Citations could be multiplied. 5 Couch, Insurance, Chap. XVI, § 1143. Although the plaintiff voluntarily undertook to give aid to his wife, her struggling to resist him and his slipping in his endeavor to do so supplied elements in the situation sufficient to bring it within the words of the policy "accidental means." It was thus a question of fact for the determination of the trial court whether the plaintiff's disabilities were wholly due to "accidental means" within the terms of the policy, and upon this matter the conclusion of the trial court must stand.

After the evidence in the case was closed and before the court rendered its decision, the defendant discovered that a physician who had testified in behalf

of the plaintiff was an own cousin of the judge presiding at the trial. Counsel for the defendant moved the presiding judge in writing to disqualify himself on the ground of his relationship to the doctor who had testified. The judge refused to do this and later decided the case. There was no error in this ruling. General Statutes, § 5393, provides for disqualification by reason of relationship to a party or interest in the result. It was not shown or claimed that the doctor who testified had any interest in the outcome of the case. Our attention has not been called to any authority which holds that a judge is disqualified simply because of relationship to a disinterested witness who testifies in the case. 33 C. J., p. 1009, § 166.

There is no error.

In this opinion the other judges concurred.