ROSE REYNOLDS *v.* THE RIDER DAIRY COMPANY ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued March 10—decided April 5, 1939.

*William F. Healey,* for the appellants (defendants).

*Leonard McMahon,* with whom, on the brief, was *Frank J. Culhane,* for the appellee (plaintiff).

BROWN, J.  The claimant's decedent was in the employ and under the control and supervision of the respondent Dairy Company as operator of a retail milk delivery truck.  He was thirty-one years of age and in perfect health on August 20, 1937, and had never complained of being in poor health.  On the afternoon of that day after concluding his work, while driving along the highway in returning to the dairy, he fell from the truck at about 5.15 o'clock and died within a few minutes.

The decedent had been employed by the Dairy Company for eight years, and for two years prior to his death delivered milk and dairy products and made collections on a route which included Ball's Pond and Lake Candlewood in New Fairfield and the summer colonies about them.  During the summer season when the summer colonies were thickly populated, the route consisted of approximately three hundred customers and was largely in a territory up and down hills.  It was the decedent's custom to deliver his milk and other products first, to assure delivery before breakfast, and then to return to make collections, both retail and wholesale.  The direct route was approximately thirty miles in length, a large portion of which he covered a second time.

On August 20, 1937, the decedent arrived at the dairy between 12 and 2 a.m. and with the assistance of Joseph Bates loaded his truck with approximately

six hundred and fifty quarts of milk and other dairy products, and left at about 3 a.m. He then proceeded to make his deliveries and collections as usual and continuing his regular duties, delivered milk at homes and stores, had his lunch and delivered several cases of milk at Joyceland between 1 and 2 p.m., and was overheard soliciting a customer there at about 2.30 p.m. The temperature on that day ranged from 76° at 7 a.m. to 98° at 5 p.m. in the shade, and was 116° in the sun at Candlewood Isle at noon; and the humidity for this territory recorded by the weather bureau was 84 at 7.30 a.m., 62 at noon, and 75 at 7.30 p.m. That morning the decedent was perspiring freely. In the afternoon he was unable to perspire and he remained at the "Farm House" on Candlewood Knolls for about an hour while the people in charge provided hot drinks in an effort to make him do so, which was unsuccessful. He called at two other stores later and had other stops to make at Ball's Pond, before he returned home that afternoon. It was while on his way from the pond to Danbury that he died, with $90 on his person which he had collected.

The day in question was exceedingly hot. The constable in charge at Candlewood Isle was compelled to allow his men to quit at 1 p.m. because of the extreme heat. The decedent had been working approximately sixteen or eighteen hours a day for some days previous, and from 1 or 2 a.m. to the time of his death on that day, at a job which necessitated his climbing up and down hills in the excessive heat. On August 18th the temperature was 76° at 7 a.m., 82° at noon, and 94° at 6 p.m., and on August 19th it was 73° at 7 a.m., 82° at noon, and 84° at 6 p.m. The decedent died of a heat or sun stroke. No other sunstrokes or heat prostrations in the town of Danbury on August 20th

were reported. Following his death the decedent's route was split into two routes.

The court's refusal to correct the commissioner's finding by striking out many of these facts is assigned as error. The record, however, reveals that all were supported by testimony or by reasonable inferences from the facts in evidence, which is a sufficient answer to the respondents' contention. The court's refusal to add to the finding other facts set forth in the respondents' motion is also assigned as error. By these they seek primarily to have detailed the decedent's activities on that day between noon and the time of his fatal attack, and to have set forth a discretion accorded him to determine just what collections he would make and what rest he would take en route, as bearing on whether the decedent's injury arose out of his employment. We are satisfied upon the evidence that no fact claimed under this assignment could be added which would materially affect the trial court's conclusion.

The remaining assignments of error purport to relate to the commissioner's "conclusions . . . not supported by the facts found." Among these is mistakenly included the commissioner's finding that "the decedent died of a heat or sunstroke." The determination of this question as to the cause of death involved the weighing of expert testimony. The record, if barren of evidence from such a source, could not support an affirmative finding upon this issue. *Slimak* v. *Foster,* 106 Conn. 366, 368, 138 Atl. 153; *O'Meara* v. *Columbian National Life Ins. Co.,* 119 Conn. 641, 645, 178 Atl. 357; *Bates* v. *Carroll,* 99 Conn. 677, 679, 122 Atl. 562; *Sickmund* v. *Connecticut Co.,* 122 Conn. 375, 379, 189 Atl. 876. There was conflicting expert testimony bearing directly on this question and also a death certificate signed by Dr. Brown stating that

sunstroke was the particular cause of death, which was evidence of that fact. *Hennessy* v. *Metropolitan Life Ins. Co.*, 74 Conn. 699, 706, 52 Atl. 490; *Russo* v. *Metropolitan Life Ins. Co.*, 125 Conn. 132, 136, 3 Atl. (2d) 844. The commissioner's finding was of a primary fact, not a conclusion based upon inference from subordinate facts. It was a fact within his province to determine, and with his determination of it neither the Superior Court nor this court may interfere. *Nicotra* v. *Bigelow, Sanford Carpet Co.*, 122 Conn. 353, 359, 189 Atl. 603; *Senzamici* v. *Waterbury Castings Co.*, 115 Conn. 446, 451, 161 Atl. 860. The fact so found must therefore stand.

The commissioner concluded that the number of hours the decedent worked, together with the physical exertion of his particular route, created an exposure greater than that to which persons generally in that locality were subjected and he was specially affected by the heat by reason of his employment, and that he sustained an injury arising out of and in the course of his employment on August 20, 1937, which resulted from heat or sun stroke. Compensation was awarded accordingly. The respondents attack these conclusions as unsupported by the facts found. Since it is not disputed that the decedent's injury was sustained in the course of his employment, the real question determinative of the appeal is resolved to this, whether the heat or sunstroke causing his death arose out of his employment.

As is evident from his first conclusion the commissioner determined that it did, because factors incident to that employment subjected him to a heat exposure greater than that to which persons generally in that locality were subjected, in consequence of which he was specially affected by the heat by reason of his employment. The first factor was the number of hours

he worked, and the second was the physical exertion of attending to this particular route. The facts found support the conclusion that the decedent's injury arose out of his employment under the rule governing cases of this nature. In sustaining an award of compensation for death resulting from sunstroke, this court has said: " 'An injury arises out of an employment when it occurs in the course of the employment and as a proximate result of it.' *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 97 Atl. 320. An employment will be a proximate cause of an injury, when the injury is the natural and necessary incident of the employment, or when the employment brings with it greater exposure to injurious results than the exposure to which persons generally in that locality are subjected, and such injurious results occur in the course of the employment. *Larke* v. *Hancock Life Ins. Co.*, supra." *Ahern* v. *Spier*, 93 Conn. 151, 154, 105 Atl. 340. *Cunningham* v. *Donovan*, 93 Conn. 313, 315, 105 Atl. 622, is also authority directly in point. What was said concerning the decedent Ahern at page 154 of the *Spier* case is equally true of the decedent Reynolds in the present case: "It does appear that the sunstroke was an incident of Ahern's employment; and that his exposure and risk to sunstroke in this employment was far greater than that of the rest of the community. This is the final test applied by us in the *Larke* case."

The difference in essential facts clearly distinguishes the present case from that of *Bailey* v. *Mitchell*, 113 Conn. 721, 156 Atl. 856, cited in the respondents' brief, where compensation for the death from heat stroke of an employee, a steam shovel operator, was denied. In that case the commissioner denied compensation but on appeal the Superior Court corrected the finding and remanded the case to him to make an award to the

plaintiff. We held that the trial court was in error in correcting the finding and said: "If the commissioner had found as a subordinate fact (as did the trial court by its correction) that the duties of the claimant's employment on the day in question reasonably required him to spend most of the time on the bottom of the excavation, or that he actually and properly did so, his exposure could hardly have been held other than greater than that of the rest of the community; but upon the facts found by the commissioner, without the important correction made by the trial court, the conclusion that his exposure did not bring him within the above-stated rule so as to require a holding that the injury by heat prostration arose out of as well as in the course of his employment and that it did not so arise, cannot be held to be 'so unreasonable as to justify judicial interference.' *Saunders* v. *New England Collapsible Tube Co.*, 95 Conn. 40, 43, 110 Atl. 538."

There is no error.

In this opinion the other judges concurred.