## HUSS v. PRUDENTIAL INS. CO. OF AMERICA.

### Civ. No. 53.

District Court, D. Connecticut.
March 7, 1941.

Leonard McMahon, of Danbury, Conn., for plaintiff.

Lorin W. Willis, of Bridgeport, Conn., for defendant.

CLARK, Circuit Judge (sitting as District Judge pursuant to statutory designation).

The question presented herein is whether or not death by sunstroke makes operative the provisions of a life insurance policy granting an additional benefit equal to the face of the policy in case of death of the insured by accidental means. The insured in this case was Thomas F. Reynolds, employed by the Rider Dairy Company of Danbury, Connecticut, as operator of a retail milk delivery truck. On August 20, 1937, he was called upon to deliver some 650 quarts of milk from the dairy in Danbury to approximately 300 customers on a 30-mile route, which included the summer resorts located in New Fairfield bordering on Lake Candlewood. The day was one of the hottest on record; it is agreed that the temperature reached 116° in the sun on Candlewood Isle at about 1:00 P. M. Beginning about noon the insured felt the effects of the heat, and at about 5:15 P. M. he toppled from his truck and died shortly thereafter. Further details of the occurrence appear in the opinion of the court in Reynolds v. Rider Dairy Co., 125 Conn. 380, 5 A.2d 855, wherein an award of compensation in favor of his widow, the plaintiff herein, and against his employer was sustained.

The policy in question was issued by defendant in 1933 upon the life of the deceased in the amount of $5,000, with the plaintiff as beneficiary. It provided for the payment of an additional $5,000 upon due proof of the death of the insured "as a result, directly and independently of all other causes, of bodily injuries, *effected solely through external, violent and accidental means,* of which, except in case of drowning, or of internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days of the accident." An additional quarter-annual premium was recited as charged for this benefit. Upon receipt of due proof of death of the insured, defendant paid the face amount of the policy, but after demand refused on December 1, 1937, to pay the additional benefit. Plaintiff thereupon instituted this action for the amount in question in the state superior court; and defendant has removed it here on a showing of diversity of citizenship of the parties.

The important facts have been stipulated by the parties. It is therefore agreed that the insured died of a heat or sunstroke manifested by several outward signs, including complete cessation of perspiration; fatigue, weakness, shakiness; pale, dry skin; dreaminess; slow breathing; sudden collapse; and dark blotches on the extremities and neck and thorax. There was also uncontroverted testimony by an attending physician in further explanation of the dark blotches. Those he said were large blue blotches, not those usually occurring in ordinary deaths, which appeared on the hands and feet, and also on the face and neck and thorax, of the insured, and increased in size as he watched them; and that these were a natural phenomenon of sunstroke, which involved an injury to the respiratory centers of the brain, causing a cessation of respiration and an increase in the amount of carbon dioxide in the blood, resulting in these blue spots or discolorations.

Whether death by sunstroke occurs through external, violent and accidental means is a question frequently litigated, although the decisions have been somewhat diverse. It has been held that while a sunstroke may be an accident, yet it cannot come within the precise limitation of death caused by external, violent and accidental means. Landress v. Phoenix Mut. Life Ins. Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382. In that case, however, Justice Cardozo dissented vigorously, asserting that in the common speech of men sunstroke was an accident violent and external in its nature, and that such common understanding should govern the construction of the insurance contract. His dissent has been widely quoted; it is often asserted that it represents the majority view, which seems to be the case at least in recent trend of the decisions. Among such cases may be cited Wiecking v. Phoenix Mut. Life Ins. Co., 7 Cir., 116 F.2d 90; Suggs v. Mutual Ben. Health & Accident Ass'n, 10 Cir., 115 F.2d 80; Goethe v. New York Life Ins. Co., 183 S.C. 199, 190 S.E. 451; O'Connell v. New York Life Ins. Co., 220 Wis. 61, 264 N.W. 253. Cases are collected in 17 A.L.R. 1197, 61 A.L.R. 1197, and 90 A.L.R. 1387.

As to the requirement of "a visible contusion or wound on the exterior of the body," the cases hold that its purpose is to provide visible physical evidence of the operation of the "external, violent and accidental means," and thus it may include "any morbid change in, or injury to, either

the subcutaneous tissue, or the skin, which produce markings or discolorations that are visible upon the exterior of the body." Further, it is not material whether the "visible contusion" results directly from the accidental means or indirectly from internal injuries, and it need not itself be a "wound" or the result of a wounding. Warbende v. Prudential Ins. Co. of America, 7 Cir., 97 F.2d 749, 753, 117 A.L.R. 760; Mutual Life Ins. Co. of New York v. Schenkat, 7 Cir., 62 F.2d 236; Wiecking v. Phoenix Mut. Life Ins. Co., supra; and cases collected in 39 A.L.R. 1011. Within this definition, therefore, the blotches of the skin and other outward signs of the sunstroke found on the body of the insured satisfied the requirement of a "visible contusion."

■■■ Of course, in view of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, this is no longer a question of general commercial law, but must turn upon the Connecticut law. Compare Wiecking v. Phoenix Mut. Life Ins. Co., supra. Defendant asserts that there is no authoritative decision in Connecticut, and that therefore this court is bound by the ruling of the Supreme Court in the Landress case. But we are admonished that "a state is not without law save as its highest court has declared it," and that it is our duty in every case "to ascertain from all the available data what the state law is." West v. American Telephone & Telegraph Co., 61 S.Ct. 179, 183, 85 L.Ed. ——. Compare also Corbin, The Laws of the Several States, 50 Yale L. J. 762, March, 1941, and Note, 47 Yale L.J. 1351. Here we have relevant data in the shape of analogous decisions which afford us a reasonably satisfactory basis for a conclusion as to the Connecticut law.

In King v. Travelers Ins. Co., 123 Conn. 1, 192 A. 311, the court ruled that ulcers on the index fingers of a dentist acquired by continuous use of an X-ray machine were a bodily injury through "external, violent and accidental means." All the court concurred in this view, though two judges dissented as to the status of the evidence in the particular case and whether it was sufficient for the jury. The court also accepted the definition of workmen's compensation cases, that a bodily injury was "a localized abnormal condition of the living body," and held that this definition included the ulcerations upon the plaintiff's fingers. Among

other authorities the court cited the leading compensation case in Connecticut of Larke v. John Hancock Mut. Life Ins. Co., 90 Conn. 303, 97 A. 320, L.R.A.1916E, 584, wherein compensation was allowed to a workman injured by frostbite. It is perhaps significant that the Larke case was one of the authorities principally relied upon also in the decision allowing compensation for this very accident. Reynolds v. Rider Dairy Co., supra.

■■■ There appears to be no real distinction between the King case and that at bar. Defendant argues that here we have a case of voluntary submission to the hazards of the weather, whereas Dr. King received injuries from the operation of a machine. But it is not apparent why one is accident and the other not, or what difference there can be, for example, between sunstroke and drowning, which is specifically mentioned in the policy provision quoted above. At any rate, the court in the King case appears definitely to repudiate any such distinction. Thus it says that the exposure of the plaintiff's fingers in that case was an accident just as much as the weather condition which produced the frostbite in the Larke case. It also points out that the policy should be construed "so as to give to the insured the protection which, attributing to the language its ordinary and natural meaning, he reasonably assumes that it affords." King v. Travelers Ins. Co., supra, 123 Conn. at page 6, 192 A. at page 313.

■ Moreover, the court has stated and applied the usual rule that in cases of doubt the words of the policy should be interpreted most strongly against the insurer, whose officers and agents have prepared the policy. Rinaldi v. Prudential Ins. Co. of America, 118 Conn. 419, 423, 172 A. 777, 779. The result seems rational, for in common understanding, as Justice Cardozo has said, death by sunstroke is certainly an accident and an unexpected and violent one, and the body of the victim contains the signs which show it. Had defendant wished to sell its policy on any other basis, it could most easily have specifically excepted death by sunstroke from its provisions for accidental death benefit.

The clerk is therefore directed to enter judgment forthwith for plaintiff for $5,000, together with interest from December 1, 1937, and the costs of this action.