FOX *v.* BANET ET AL.

[No. 16,911. Filed March 24, 1942. Rehearing denied May 9, 1942.]

*Slaymaker, Merrell & Locke, Clarence F. Merrell,* and
*Herbert C. Krauch,* all of Indianapolis, for appellant.

*Snouffer & Snouffer* and *James P. Murphy*, all of Fort Wayne, for appellees.

STEVENSON, J.—The appellees, as dependents of Clarence E. Banet, deceased, were awarded compensation by the Industrial Board of Indiana at the rate of $9.62 per week for a period of three hundred weeks.

The application for the adjustment of this claim for compensation alleged that, on the 23rd day of July, 1940, Clarence E. Banet died as a result of personal injuries received by him on said day, by reason of an accident arising out of and in the course of his employment by the appellant.

From the award of the Industrial Board this appeal has been perfected, and the appellant contends that said award is contrary to law because it is not sustained by sufficient evidence. It is the appellant's contention that there is no evidence to establish the fact that the death of Clarence E. Banet was the result of an accident arising out of his employment.

The record discloses that the appellant was engaged in the business of operating a restaurant at Fort Wayne, Indiana, which was located in a room about forty-five feet long and twenty-one feet wide. In this room were located a steam table, coffee urns, and other restaurant equipment, and to the rear of this room was the kitchen, in which the food was prepared.

On the 23rd day of July, 1940, the deceased, Clarence E. Banet, was employed as a waiter, and began work in the early morning and worked until noon. He returned to his work at six o'clock in the evening and was busily engaged in waiting upon customers until some time after seven p. m., when he complained of feeling pain in his chest. The appellant suggested that he would take the deceased to his home, and on

the way they stopped to see a doctor. The day had been very warm, temperatures in the forenoon ranged from 75 to 89 degrees; at two p. m. it was 90 degrees, at seven p. m. it was 88 degrees and at eight p. m. it was 83 degrees. The relative humidity at six-thirty p. m. was 62% and had been as high as 84% that day. At the time the employee stopped work, he was wet with perspiration, and the doctor who examined him testified that he was covered with a cold, clammy sweat. He was nervous and vomited during the examination. The doctor diagnosed his ailment as heat prostration, and ordered that he be put in bed, and prescribed a sedative. He was taken home and put to bed, and died a few hours later. Another doctor, who was called immediately following his death, testified that upon examination he found the body still warm and wet with perspiration, the upper part of the body having a purplish hue, almost a plum color. This doctor also diagnosed the case as heat prostration. The deceased was a strong, ablebodied man, and had not been afflicted with any illness, organic or heart ailments prior to the date of his death. Other medical men testified that in their opinion the employee died of a coronary occlusion.

It is the appellant's contention that this evidence is insufficient to show that the death was a result of an accident arising out of his employment by the appellant. The appellant contends that the death of Clarence E. Banet was not the result of any hazard or danger peculiar to his employment, but that it was, at most, the result only of conditions to which the general public was subjected on that day.

Questions similar to the case at bar have been before the courts of many jurisdictions, and while the statutes

differ somewhat in the different states, the general accepted rule has been well stated in the case of *State Roads Commission* v. *Reynolds* (1933), 164 Md. 539, 546, 165 A. 475, 478:

> "A heat stroke or heat prostration may be an accident within that definition, where it actually results from the employment, and at the time it is suffered the person afflicted is by the nature of the employment subjected to a greater risk than the public generally."

In the above mentioned case, the employee was a road worker, engaged in loading cobble stones into a truck. The day was hot and the workman was exposed to the sun which was shining brightly. While engaged in this work, the workman complained of pain in his chest, and soon became unconscious and died. In passing upon the contention that the accident did not arise out of the employment, the court said:

> "It may fairly be inferred from the evidence that Reynolds died as a result of heat prostration or a sunstroke which would not have occurred but for the heat of the day and the character of the work in which he was engaged. The heat of the day was a fixed condition, in the sense that it was neither higher nor lower, but the same for the whole public subjected to it, and was a constant factor. Its effect on individuals depended upon varying conditions, such as the power of resistance, and the exposure of the individual and the nature of his work, and was a variable factor. If the injury resulted from the heat of the day alone, then it did not arise out of the occupation and was not compensable, because then it arose from a cause which affected all alike, and not from the employment. But if it arose from the heat plus the nature of the employment and the conditions under which it was performed, then it arose from conditions which did not affect those engaged in the occupation and those not so engaged alike, and may fairly be said to have arisen out of the employment."

These same rules of law were announced by the Supreme Court of Florida in the case of *Alexander Orr, Jr., Inc.* v. *Florida Industrial Commission* ■ (1937), 129 Fla. 369, 370, 372, 176 So. 172. In this case, the deceased workman was a plumber, engaged in laying sewer pipe. It was a hot, sunshiny day and the workman was required to use and did use a blow torch in connection with his work. He was overcome with heat and died. The court said:

> " 'If the heat exhaustion arose out of the employment as well as in its course, we think it is clear that any harmful effect upon the physical structure of the body of the employee, which was a proximate result of it, is an accident under our statute. . . .'

> . . .

> " '. . . The rule is that, when the employment brings a greater exposure than that to which persons generally in that locality are exposed, injury or death resulting therefrom, such injury or death does arise out of the employment. . . .' "

In the case of *Patten Hotel Co.* v. *Milner* (1921), 145 Tenn. 632, 638, 238 S. W. 75, the deceased workman was employed as a cook in the Patten Hotel. While working in the kitchen, the deceased became too hot, and was stricken with a fainting sensation. He later became unconscious and died. The court said:

> " 'An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.' "

In the case of *Reynolds* v. *Rider Dairy Co.* (1939), 125 Conn. 380, 5 A. (2d) 855, the claimant's decedent was engaged in delivering milk for a dairy. The day

was very warm and the humidity high. He began work on his route at about 2 a. m. and worked all day making deliveries and collecting. In the forenoon, he perspired freely, but by afternoon he had ceased to perspire and after resting at a customer's house for some time, where hot drinks were given him in order to induce perspiration, he started for home and died on the way. In holding that his death arose out of his employment, the court held that the number of hours worked, and the physical exertion of attending to his work were particular factors incident to his employment that subjected him to greater exposure than that to which people in that locality were generally subjected. It was because of these factors that "he was specially affected by the heat by reason of his employment."

Applying these rules to the case at bar, it is apparent that the appellees' decedent, because of his employment, was subjected to greater exposure to injurious results than the exposure to which persons generally in that locality were subjected. He was engaged in waiting upon the appellant's customers in a room without cross-ventilation. The day was excessively warm and the humidity was high. The trade for the evening meal was quite heavy, and, in waiting upon these customers, the appellees' decedent was exposed to the heat from the kitchen, the steam table, the coffee urn, and while so engaged in such labor, the appellees' decedent was overcome from the heat. It is our opinion that this overexhaustion arose out of his employment. As was said by the Court of Appeals of Maryland, in the case of *Schemmel* v. *Gatch & Sons, etc., Co.* (1933), 164 Md. 671, 685, 166 A. 39:

"Those conditions were peculiar to the employment and not such as affected the public generally in that neighborhood, and, when those facts are

considered in connection with the medical testimony, they furnish legally sufficient evidence to permit the inference that claimant's injury was caused by unusual and extraordinary conditions in the employment, that it was accidental in its nature, and that it arose out of and in the course of the employment."

This court is committed to the doctrine that sunstrokes and heat prostrations are accidental injuries, generally speaking. See *Cunningham* v. *Warner Gear Co.* (1935), 101 Ind. App. 220, 198 N. E. 808; *Townsend & Freeman Co.* v. *Taggart* (1924), 81 Ind. App. 610, 144 N. E. 556.

In the case at bar, while the evidence is conflicting as to the cause of death, there is positive medical testimony, not only from the physician who examined the appellees' decedent on his way home from work, but others as well, to the effect that the death was the result of heat exhaustion. The Industrial Board found this to be a fact, and we are accordingly bound by such finding. It is our opinion, therefore, that the evidence is sufficient to support the award of the Industrial Board.

Award affirmed.

NOTE.—Reported in 40 N. E. (2d) 356.