RICHARD G. DAVIS *vs.* THE EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED STATES.

JULY 30, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This action of assumpsit, brought to recover payments alleged to be due under a certain accident and health insurance policy, was tried before a justice of the superior court, sitting without a jury, and resulted in a decision for the defendant. The case is before us on the plaintiff's exceptions to such decision and to certain other rulings relating to the introduction of evidence. The plaintiff has expressly waived all exceptions but the twenty-seventh, to the decision of the trial justice, and the following exceptions, to rulings admitting certain evidence, namely the first to twelfth; fourteenth to sixteenth; seventeenth to twenty-sixth, all inclusive, with the exception of the twenty-second exception, which is also waived.

The evidence discloses that the defendant, an insurance company, issued to the plaintiff an accident and health insurance policy dated March 3, 1922. "Part V" of this policy, upon which the right of the plaintiff to recover depends, reads as follows: "If such disease shall wholly and continuously disable the insured and prevent him from performing any and every duty pertaining to his occupation, the society will pay for the period of such continuous disability but not exceeding fifty-two consecutive weeks the single weekly indemnity hereinafter specified. After the payment of weekly indemnity for fifty-two weeks as aforesaid the society will continue the payment of weekly indemnity of the same amount thereafter so long as the insured shall be wholly and continuously disabled by such disease from engaging in any occupation or employment for wage or profit."

The plaintiff was stricken with acute poliomyelitis, commonly called infantile paralysis, about September 5, 1922. The defendant paid the plaintiff $50 weekly for the first fifty-two weeks of his disability, being the indemnity specified; and thereafter continued payments in the same amount, until about September 27, 1935, when it refused to make further payments on the ground that the plaintiff was no longer disabled to the degree required by the terms

of the policy. The present action was commenced June 1, 1936, to recover payments allegedly accrued under the policy for the period from September 27, 1935 to the date of the writ.

The defendant contends that the plaintiff has failed to establish by a preponderance of the evidence that he was "wholly and continuously disabled by such disease from engaging in any occupation or employment for wage or profit." The plaintiff contends that the intent of the policy is to provide payments, if the plaintiff is unable to perform the substantial duties of any such occupation or employment for which he is qualified; that mere ownership of a business is not being engaged in an occupation or employment; that the plaintiff is unable to engage in the occupation of operating the business owned by him; that no wage or profit results from the plaintiff's alleged occupation or employment; that such a construction of the policy as he urges has been adopted by the parties for a number of years; and that the trial justice erred in his findings of fact and misconceived the law applicable to the evidence, and erred in admitting certain evidence relative to the financial aspects of the plaintiff's business.

Treating first the ground of the plaintiff last above stated, we have examined the evidence specified in all the exceptions, previously set forth, to rulings admitting evidence concerning the financial aspects or profit of the plaintiff's business, and we find no prejudicial error in the admission of any such evidence. The provisions of the policy, upon which the plaintiff's right to recover depends, specifically bring into issue the question whether the plaintiff is wholly and continuously disabled from engaging in *any occupation or employment for wage or profit.* The evidence referred to in these exceptions all related to the financial aspects of the business conducted by the plaintiff and appears to us to be reasonably pertinent to the issues of the instant case. The objections generally go to the

weight to be given such evidence rather than to its admissibility. If any of it was admitted in error, it was at least not prejudicial. For this reason all of the plaintiff's exceptions now relied on, which are to the introduction of evidence, are overruled.

This leaves for consideration only the twenty-seventh exception, to the decision of the trial justice. He ruled that the burden was upon the plaintiff to show by a fair preponderance of the evidence that between September 27, 1935 and June 1, 1936, (the period for which recovery at the rate of $50 per week is sought) he was "wholly and continuously disabled . . . from engaging in any occupation or employment for wage or profit" to the extent that would require the defendant, under the policy, to pay the disability benefits specified therein; and, after discussing the law and evidence in a carefully prepared rescript, he set forth numerous findings of fact, upon which he reached the conclusion that the plaintiff had not shown by a preponderance of the evidence that he was so wholly and continuously disabled as to warrant his recovery under the terms of the policy.

From our examination of the evidence, we cannot say that the conclusion reached by the trial justice was erroneous. There is evidence to warrant the finding that the plaintiff was not wholly and continuously disabled within the degree contemplated by those terms in the policy, whereby the defendant would be required to continue to pay benefits thereunder after September 27, 1935. The plaintiff, following the rule of liberal construction, urges that the words "wholly and continuously disabled . . . from engaging in any occupation or employment for wage or profit", in this type of insurance policy, are not to be construed literally, but rather substantially so as to effect the object of the policy and the intent of the parties. Nevertheless, conceding the rule advocated, the evidence here warrants the conclusion that the plaintiff on or after Sep-

tember 27, 1935, was personally able to perform and did perform regular and important services as the proprietor and manager of a large garage business, from which he derived a reasonable livelihood; and further that, in the kind of occupation for which he was qualified and which was in contemplation of the parties when the policy was issued, he was able, after September 27, 1935, to perform and personally did perform in the customary way all of the substantial duties and requirements of such an occupation.

In his application for this policy of insurance, the plaintiff described his occupation as "chief executive with office and travel duties only". The issuance of the policy thereon makes clear the intent of the parties thereby to insure the plaintiff against disability, of the nature described therein, which would affect his earning capacity in substantially that kind of occupation. While at that time he also engaged in the selling of automobiles from a different headquarters, a venture which was shortly thereafter discontinued by receivership proceedings, he was spending approximately two-thirds of his working time in attending to the garage business.

The evidence shows that at that time and before his affliction he determined the policies of the business, hired and fixed the salaries for workmen whom he engaged, attended to some of the bookkeeping—having a bookkeeper most of the time—prepared and sent bills, conferred with customers, mechanics and other workmen relative to the service or repair work, took care of the financial end of the business and generally exercised the functions of a proprietor who was the executive head and active manager of the business. It does not appear in evidence that he then engaged physically in the mechanical work of repairing, for which he had employed other workmen; nor that he then intended to be covered by this insurance policy in

the capacity of a skilled mechanic or other workman or employee around the garage.

The evidence further discloses that since September 27, 1935, he has been spending several hours regularly each day at the garage in the morning and that in the afternoons and evenings, he has been playing auction bridge for some five or more hours at one of the country clubs in East Providence and at his home or the home of friends. He admitted that he "was owning and running the business" and that he "was the manager" of the garage business, in addition to having money invested in it and employing other people to work for him and in telling them what to do. The business was apparently operated, advertised and listed in directories under the plaintiff's own name for many years, and, while he formerly hired one Darnell largely to do the bookkeeping and certain "white collar" duties up to 1925 or 1926, he has ever since been doing that work himself.

The evidence also shows that he has been attending to all of the financial aspects of the business and personally has been attending to all the usual office work and the bookkeeping, with the exception of some assistance which he receives twice a month from an auditor or accountant, who prepares trial balances and profit and loss statements, and who also attends to Federal income tax returns from figures provided and kept by the plaintiff; that he has continued to hire and direct at least four employees who have been engaged by him to do repair and other work incidental to the garage business; that he has continued to confer with customers and the mechanics, to purchase and account for supplies and generally to determine all of the policies; that he has been preparing and sending out bills to customers, and also has been the manager and director of a garage business having a capacity of eighty to one hundred cars, and the incidental sales of oil, gas, tires and the repair of automobiles; that he has been

paying himself and his brother Francis P. Davis a substantial rent for the use of the garage property, which they own together, and also that he has continued to credit himself with $50 per week as salary for his personal services in the business; and that the gross average annual income from all of the garage business has been apparently in excess of $20,000, and has shown, according to the defendant's analysis, an annual profit in all the many years during his disability, with the possible exception of one.

The evidence further discloses that the plaintiff's disability has had no effect upon his mentality, his arms, hands or generally upon his body above the waist. He is now able to drive and does drive his own automobile, with the aid of special appliances, and has made considerable progress in ability to walk around, with the aid of crutches. According to his doctor's testimony there is nothing in his physical and mental condition which would prevent him from doing more of the kind of work in which he is now engaged, and that his present work is performed wholly without any danger or detriment to his health.

To summarize this and the other evidence, it is reasonable to conclude that he has the physical and mental capacity to perform and is now performing personally, in the manner which is usual and customary to one engaged in his kind of occupation, all of the substantial duties required of the manager and director of a reasonably large garage business; and further that he is able to perform and, without detriment or danger to his health, is performing, all of the substantial duties in connection therewith which he was performing at the time when the insurance policy was issued.

We cannot agree that the evidence in this case shows that the plaintiff is performing merely "trivial things" or that his work and income therefrom is merely an incident of ownership, as urged by counsel for the plaintiff. The fact that the plaintiff is now performing substantially

all the bookkeeping and other work formerly attended to by the paid employee Darnell indicates that he is now making a substantial contribution of personal services to the garage business, which kind of services he did not formerly perform. That such bookkeeping has not been as simple or trivial, as described in the plaintiff's brief, appears from a consideration of the exhibits and from the following testimony of the witness Goodman, a certified public accountant: Q. "Did you find the books clearly and fully kept, Mr. Goodman?" A. "I did." Q. "And very briefly, without going into too elaborate detail, just describe the various steps." A. "Charges are made out in the garage, forwarded to the office, Mr. Davis records the charges in the bill books, transfers them to a sales book, the sales book is summarized, posted as far as individual accounts are concerned, to the accounts receivable ledger, transferred to the cash receivable book or cash journal. This cash journal also records money received from customers, money paid to creditors—records the creditors' bills. Postings are made from that book monthly to the ledger. The whole constitutes an accurate double entry bookkeeping system. I might say that from the ledger the monthly or bi-monthly statements are prepared which are very enlightening."

In our opinion the evidence shows that, since September 27, 1935, he has been making a substantial personal contribution of important services as the general manager and also as a bookkeeper, independent of his ownership of or investment in the business; that he has earning capacity to make a reasonable livelihood, as indicated by the credit of $50 as weekly salary for personal services, in an occupation for which he is qualified; and that his performance for wages or profit of all of the substantial duties which are required and customarily performed by one engaged in the occupation of office executive, which was contemplated by the parties, supports the conclusion that

he is not "wholly and continuously disabled by such disease from engaging in any occupation or employment for wage or profit", as contemplated by the terms of the policy, even when this language is construed liberally in accordance with the contention of the plaintiff and with the cases submitted by him.

From our consideration of the evidence we cannot say that the conclusion of the trial justice was clearly erroneous.

All of the plaintiff's exceptions are overruled and the case is remitted to the superior court for entry of judgment for the defendant on the decision.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for plaintiff.

*William H. Edwards, Elmer E. Tufts, Jr., Edwards & Angell,* for defendant.