MATTHEW F. RATCHFORD *v.* MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION

COURT OF COMMON PLEAS     FAIRFIELD COUNTY     FILE NO. 71492
AT BRIDGEPORT

Memorandum filed September 25, 1961

*Lorin W. Willis,* of Bridgeport, for the plaintiff.

*Gumbart, Corbin, Tyler & Cooper,* of New Haven, for the defendant.

LUGG, J. Dr. Matthew Francis Ratchford in 1930 began practice as a specialist in oral surgery and extraction in Danbury, Connecticut. Except for a period of study which led to his master's degree in oral surgery, he engaged in this profession continuously thereafter, until the events hereinafter set forth. In March, 1955, he first noticed symptoms in his right hand which led him to a medical doctor and thence in July to surgery. The following month he attempted to resume his practice, but was forced by the condition of his hand to close his office and cease his profession. In October of 1956, his left hand began to exhibit similar symptoms and eventually required surgery also. The doctor is suffering from radiation dermatitis which has caused a squamous type of skin cancer on his right index finger and may cause further cancerous conditions. He was warned in 1955 that if he continued to take x-rays, it would eventually kill him. The surgery on his hands has left him with but 5 to 8 percent of motion in each of his index fingers, and he is unable to grasp metal objects with either of them or with his thumbs. For

the rest of his life, there will be no improvement in his hands, and he will be under medical care. He is totally and permanently disabled from engaging in either his specialty of oral surgery or general dental practice.

At the times material hereto, Dr. Ratchford was the insured under a health and accident policy issued by the defendant. The provisions thereof now in issue are the following: "Mutual Benefit Health & Accident Association, Omaha, Nebraska Hereby insures the person whose name is shown in the Schedule on the last page hereof (herein called the Insured), who is a member of the Group shown in the same Schedule (herein called Group), subject to the provisions and limitations of this policy, against loss of life, limb, or sight occurring, or loss of time sustained and commencing, while this policy is in force and resulting directly, and independently of all other causes, from such injuries, and against loss of time beginning while this policy is in force and caused by such sickness, the terms, such injuries and such sickness, to pertain only to those which shall be incurred and cause such losses within the United States, Canada, Alaska, Mexico, or Hawaii and to be further defined as follows: (a) the term, such injuries, as used in this policy, shall mean accidental bodily injuries occurring while this policy is in force, but shall not include: (1) suicide (sane or insane), (2) injuries resulting in any condition named in the next following paragraph of this Insuring Clause, or (3) injuries received as a result of or while participating in aeronautics or air travel except as provided in Part C; . . . .

"Part D. Total Disabiltiy Benefits – If the Insured, because of such injuries which do not result in any of the above-mentioned specific losses, shall be wholly and continuously disabled and under the professional care and regular attendance of a legally

qualified physician, other than himself, the Association will pay indemnity for one day or more (benefits begin with the first medical treatment during disability) at the rate of The Monthly Benefit per month so long as the Insured lives and suffers total loss of time, if the disability commences prior to the Insured's sixtieth birthday, but not to exceed twelve months if the disability commences on or after the Insured's sixtieth birthday."

Pursuant thereto, the insurer paid Dr. Ratchford the monthly benefit from October, 1955, to June, 1957, when it refused to make any further payments, thus precipitating this lawsuit. The only issue involves the interpretation of the phrase in Part D, "wholly and continuously disabled." More specifically, while it is the plaintiff's stand that the phrase means such a disability as renders one unable to perform the material acts of his own profession, it is the claim of the defendant that the clause requires the plaintiff to "prove that he is disabled from performing any occupation for which he is reasonably fitted by reason of his training, experience and education."

It is a matter of some surprise that this issue has not been decided in our own state, the home of so many great insurance companies, especially in view of the abundance of decisions on the subject throughout the country. Three Connecticut cases have dealt with the general subject of disability clauses but are not in point because of the reasons indicated. *Ross* v. *Equitable Life Assurance Society,* 4 Conn. Sup. 46 (1936), involved a specific and detailed definition of disability, as did *Hallihan* v. *Mutual Life Ins. Co.,* 9 Conn. Sup. 209 (1941). In *Lickteig* v. *Travelers Ins. Co.,* 10 Conn Sup. 378 (1942), the insured was found as a fact to be totally disabled. *King* v. *Travelers Ins. Co.,* 123 Conn. 1 (1937), deals with a factual situation of striking

similarity to this, but the point at issue differs. Incidentally, it may be noted that the phrase "total incapacity to work" has been construed under the Workmen's Compensation Act to mean inability to work at one's customary calling or at any other occupation one might reasonably follow. *Czeplicki v. Fafnir Bearing Co.*, 137 Conn. 454, 456 (1951). This is not helpful here, of course, for the obvious reason that it is a construction placed on a stereotyped and statutory phrase and not upon private contracts made under a variety of circumstances. An examination of other law therefore becomes pertinent.

Disability clauses in sickness and accident policies or in life insurance sometimes are phrased to require only that the insured be prevented from performing the duties pertaining to his particular profession. These are called "occupational disability" clauses. Other such provisions provide benefits for disability from performing any work or following any occupation for compensation, and are known as "general disability" clauses. 29A Am. Jur. 620, § 1516. The policy here in issue does not specify either, and the consequent narrowing of the question to be decided eliminates from consideration the plethora of cases involving such specific phraseology. See cases collected in notes, 149 A.L.R. 7, 153 A.L.R. 430; 21 Appleman, Insurance §§ 12544, 12545. Hence, a highly accurate statement is that contained in 7 Couch, Cyclopedia of Insurance Law § 1673, p. 5783: "As to the test for determination of what constitutes total permanent disability, it has been said that, since every case must depend upon its own facts, there can be formulated no general rule more definite than that relativity and circumstances control; and that every insured's rights depend upon the consequences of his own impairment and disability, and not upon whether his ca-

pacity be less or more than that of the average man."

Obviously, the most pertinent of the "circumstances" referred to is the policy itself. Thus, the issue becomes whether or not, in the absence of any qualifying phraseology, the disability clause here requires the insured to be disabled only as to his particular occupation or from any gainful employment. The defendant in its brief further narrows the issue by claiming only that the plaintiff must be unable to perform the tasks of any other occupation for which he is fitted by reason of his education, background, and physical condition.

The defendant is correct that the policy here is not what is technically defined as group insurance. The latter is coverage of a number of individuals by means of a single policy, the premium usually paid singly to the insurer, as typically in the insurance of all employees in a particular factory. See 1 Couch, op. cit. § 29; 1 Appleman, op. cit. § 41; *Emerick* v. *Connecticut General Life Ins. Co.*, 120 Conn. 60 (1935). Nevertheless, this policy was issued to Dr. Ratchford because he was a member of the "Connecticut State Dental Group." It is specifically so endorsed in a printed form provided for that purpose on the policy. Furthermore, such plans as that under which the plaintiff was insured are customarily advertised by the insurance companies as "group" insurance. A precise example is the plan contemporaneously being so offered in connection with the American Bar Association endowment to the legal profession.

Construction placed upon this disability clause and others containing substantially equivalent language, such as "total disability," "permanently disabled," and the like, has divided into three principal categories. The first holds that an insured is not

totally disabled unless he cannot engage in any occupation whatever, the so-called "strict" view. The middle ground is that the insured need be disabled not only from engaging in his usual business or occupation but also from any comparable employment for which he is fitted by education, experience, background and physical condition. The third or "liberal" view holds that total disability occurs if the insured becomes unable to perform the duties of his particular occupation. Note, 149 A.L.R. 7, 39; 29A Am. Jur. 622, § 1518.

In general, "the courts are lenient in sustaining a finding of total disability under insurance policies, where such finding is supported by substantial evidence. The same generous results have obtained where the policy test is that of 'continuous and total disability,' or that the insured be 'wholly disabled,' 'wholly and continuously disabled,' or 'immediately, totally and continuously disabled.' The finding of such disabilities may result though the insured has made subsequent futile efforts to carry on." 21 Appleman, op. cit. § 12544.

The court has examined a very large number of cases in an attempt to isolate decisions based on a disability clause such as the one here involved, specifically, where there are no qualifying or defining words as to what constitutes total disability. It has found but few by comparison with the abundance of decisions on disability clauses in general. In a factual situation closely paralleling this, it was held that where the occupation of the disability policyholder has become that of a recognized specialist in surgery and the policyholder suffers from a physical impairment or disease which causes an uncontrollable tremor of hands, or an infection, such as dermatitis, resulting in forced discontinuance of his practice, the policyholder is "totally disabled." *Dixon* v. *Pacific Mutual Life Ins. Co.,*

268 F.2d 812, 815 (2d Cir.), cert. denied, 361 U.S. 948 (1959). To the same effect was *Flanagan* v. *Welch,* 93 So. 2d 36, 39 (La. App. 1956). In *Mutual Benefit Health & Accident Assn.* v. *Bird,* 185 Ark. 445 (1932), the policy read, in a clause practically the same as that in issue here: "If such injuries as described in the insuring clause shall wholly and continuously disable the insured for one day or more, and so long as the insured lives and suffers said total loss of time, the association will pay . . . ." The court, quoting Kerr, Insurance, page 386, held: "Total disability exists although the insured is able to perform a few occasional acts, if he is unable to do any substantial portion of the work connected *with his occupation.* It is sufficient to prove that the injury wholly disabled him from the doing of all the substantial and material acts necessary to be done *in the prosecution of his business* . . . ." (Italics supplied.) See *Heald* v. *Aetna Life Ins. Co.,* 340 Mo. 1143, 1150 (1937); *DeSoto Life Ins. Co.* v. *Jeffett,* 210 Ark. 371 (1946); s.c., 212 Ark. 798 (1948); *Mutual Life Ins. Co.* v. *Barron,* 70 Ga. App. 454 (1943); and cases collected at 149 A.L.R. 40.

Indeed, many courts have gone much further and limited the disability prerequisite to recovery to the insured's own profession or occupation even when the policy states that he must be disabled from engaging in any activity for remuneration or profit. One of the most emphatic of these holdings is contained in *Foglesong* v. *Modern Brotherhood of America,* 121 Mo. App. 548 (1906), where the policy read "permanent and total disability . . . which renders him unable to carry on or conduct *any vocation or calling* . . ." (italics supplied). There the court (p. 552) specifically rejected the doctrine that "[t]otal disability naturally means totally disabled from all kinds of business unless by the contract the disability is to be only from the usual occupation of

the assured. . . . [This] would be . . . to reduce all such contracts to nullities and to make them the instruments of extracting dues from policy holders without creating any liability on the part of the insurers. . . . The language of the policy . . . should be construed . . . [to mean] the vocation or calling he . . . [was] following at the time he . . . [was] disabled and not any vocation whatever which he might be able to follow after he had been disabled. 'When parties enter in a contract it must be assumed that they intended that which in certain events or contingencies would mean something and have some effective force.'" Similar holdings were made in *Deckert* v. *Western & Southern Life Ins. Co.*, 51 F. Sup. 44 (E.D. Ky. 1943); *Missouri State Life Ins. Co.* v. *Snow*, 185 Ark. 335 (1932); *Franklin Life Ins. Co.* v. *Stiles*, 90 Ga. App. 311 (1954); *Franklin Life Ins. Co.* v. *Ransom*, 85 Ga. App. 659 (1952); *Mutual Life Ins. Co.* v. *Childs*, 64 Ga. App. 658 (1941); *National Life & Accident Ins. Co.* v. *O'Brien's Executrix*, 155 Ky. 498 (1913); *Ebert* v. *Prudential Ins. Co.*, 338 Mich. 320 (1953); *Stoner* v. *New York Life Ins. Co.*, 90 S.W.2d 784 (Mo. App. 1936); *Reinsch* v. *Travelers Ins. Co.*, 133 Neb. 249 (1937); *Fannick* v. *Metropolitan Life Ins. Co.*, 34 N.J. Super. 556 (1955); *Halperin* v. *Equitable Life Assurance Society*, 125 Misc. 422 (N.Y. 1925) (citing the *Foglesong* case, supra); *Davis* v. *Equitable Life Assurance Society*, 61 R.I. 414 (1938); *Dunlap* v. *Maryland Casualty Co.*, 203 S.C. 1 (1943). There are many other like holdings in the cases listed in the notes at 149 A.L.R. 7 and 153 A.L.R. 430.

An examination of cases too numerous to cite leads the court to the conclusion that the largest number of decisions dealing with disability clauses in general take the middle ground, namely, that total disability means that the insured is unable to engage in his own occupation or one to which he is fitted by his training, background and other cir-

cumstances. But these cases are almost invariably based on clauses with limiting words such as *"any gainful occupation"* and the like. In this case, there is no such limitation, and the issue is therefore the construction of the simple phrase as it so stands. It hardly needs citation to demonstrate authority for the proposition that the policy is to be construed most strongly against the insurer. *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* 143 Conn. 510, 513 (1956) ; *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 58 (1955) ; *Raffel* v. *Travelers Indemnity Co.,* 141 Conn. 389, 392 (1954) ; *Scranton* v. *Hartford Fire Ins. Co.,* 141 Conn. 313, 315 (1954) ; *King* v. *Travelers Ins. Co.,* 123 Conn. 1, 4 (1937). "When the language of an insurance contract is fairly open to different interpretations, the one which will sustain the insured's claim is the one to be adopted." *London & Lancashire Indemnity Co.* v. *Duryea,* supra; *Scranton* v. *Hartford Fire Ins. Co.,* supra, and cases cited.

Where a person is engaged in a definite and apparently permanent occupation, which is certainly an element of the risk upon which the contract and premiums to be paid are based, it hardly requires a liberal construction to hold that it was that employment and that one alone that the parties had in mind when the contract was made. It is with knowledge of their liability and the law applicable that insurance companies fix their rates and premiums, and to require a premium fixed to cover a certain type of employment and then deny recovery on the basis of the assured being able to make a living doing some entirely uncontemplated kind of work is fallacious legal reasoning and tragic to the assured, who thought he was insuring his future against inability to carry on the profession he was engaged in at the time the contract was written. *Deckert* v. *Western & Southern Life Ins. Co.,* supra, 45. That the occupation of the assured might change was in

the mind of the defendant at the time the policy was made is beyond argument. The company provided for just such a contingency in the policy itself. Had the company wished to do so, and especially in view of the enormous body of existing law on the subject, it could very easily have made its liability contingent on the insured's disability to engage in any gainful occupation, as so many of such policies do. "It lay in the power of the defendant to formulate the terms of the provision so as to remove any doubt as to its meaning and intent." *Scranton* v. *Hartford Fire Ins. Co.,* 141 Conn. 313, 316 (1954); *Westmoreland* v. *General Accident Fire & Life Assurance Corporation, Ltd.,* 144 Conn. 265, 275 (1957).

It is therefore held that the meaning of this insurance policy is that the defendant insured the plaintiff against inability to conduct the profession in which he was engaged at the time they made the contract. Judgment may therefore enter for the plaintiff in the amount of $1400, with interest and his costs.