**Carolyn A. RUSSELL**

**v.**

**CAMDEN COMMUNITY HOSPITAL and/or Hartford Accident & Indemnity Company.**

Supreme Judicial Court of Maine.

July 1, 1976.

**608** ◼ ▬▬▬▬▬▬▬▬

---

Strout, Payson & Pellicani, by Joseph M. Cloutier, Rockland, for plaintiff.

Mahoney, Robinson, Mahoney & Norman, by Lawrence P. Mahoney, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

PER CURIAM.*

The claimant, Carolyn Russell, was employed as a nurse's aide at the Camden Community Hospital from 1969 until August, 1973, at which time she became ill with tuberculosis, and then from November, 1973 until the present. On January 15, 1974 she filed a petition for an award of compensation with the Industrial Accident Commission, alleging that the tuberculosis was an injury received in the course of her employment. A hearing was held on that petition on February 21. Subsequently, the claimant filed a second petition for an award of compensation under the Occupational Disease Law. A hearing was held on this petition on October 3, 1974 and all evidence introduced at the first hearing was admitted at the second. The Commissioner found that the claimant was entitled to compensation under Maine's Occupational Disease Law, 39 M.R.S.A. § 182, et seq. The employer appeals from this decision. We deny the appeal.

The claimant testified that when she awoke on August 1, 1973 she began to cough up small amounts of blood. She called Dr. Stewart Martin who admitted her to a hospital where X-rays were taken, revealing an infiltration on her lung. Although tests performed on a culture taken from her trachea to determine whether she suffered from tuberculosis produced a negative result, a later skin test did show a positive result, indicating that the claimant had had prior contact with the tuberculosis organism. Dr. Martin testified that in his opinion the claimant did have tuberculosis and that he ordered a course of treatment for that disease. The Commissioner concluded that it "is more likely than not" that the claimant had tuberculosis on August 1, 1973.

The Commissioner also found that the claimant had attended a patient at the Camden Community Hospital named Elio J. Talamine who was suffering from a caseating tuberculosis ulcer. From the hospital records it appears that the claimant applied an ointment to the infected area on

---

* The opinion in this case was written by, Weatherbee, J. and adopted by the Court after his death.

several occasions during the 20 days Mr. Talamine was in the hospital from March 24 to April 12, 1972. Dr. Martin stated that the opportunity for contracting tuberculosis increased with the intimacy of contact with a tuberculosis sufferer. The Commissioner concluded that because of the claimant's direct contact with the tuberculosis organism, "it is more probable than not" that her infection with tuberculosis was a result of her attentions to Mr. Talamine.

The Commissioner further found that the claimant's tuberculosis was an occupational disease within the purview of the Occupational Disease Law because, as a matter of fact, exposure to the disease "was inherent in this particular occupation of the employee". The Commissioner also ruled that, as a matter of law, the claimant did not have the burden of proving that her employment must necessarily expose her to tuberculosis, but only that the general nature of her duties required that she be exposed to any sort of infectious disease.

The employer argues on appeal that 39 M.R.S.A. § 186 requires the claimant to prove exposure to the disease for a period of 60 or more days and that the Commissioner's finding of medical causation is not supported by the facts. We reject these contentions.

*The 60-Day Requirement*

At all times relevant to this employee's petition, 39 M.R.S.A. § 186 reads as follows:

"The date when an employee becomes incapacitated by an occupational disease from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease shall be taken as the date of the injury equivalent to the date of accident under the Workmen's Compensation Act. Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall be liable therefor. The amount of the compensation shall be based upon the average wages of the employee when last so exposed under such employer, and notice of injury and claim for compensation shall be given and made to such employer. *The only employer and insurance carrier liable shall be the last employer in whose employment the employee was last injuriously exposed to the hazards of the disease during a period of 60 days or more, and the insurance carrier, if any, on the risk when the employee was last so exposed, under such employer.*" (Emphasis added.)

The evidence disclosed that Elio Talamine was a patient in the hospital for only 20 days. The employer therefore argues that the claimant could not possibly have been "exposed to the hazards of the disease for a period of 60 days or more" as affirmatively required by 39 M.R.S.A. § 186. The employer claims that the purpose of the 60-day requirement is to establish a mandatory period of exposure to the hazards of employment without which it is irrebuttably presumed that there can exist no direct causal connection between employment and infection. We do not agree. We believe that both the purpose and the structure of the Occupational Disease Law persuasively argue against the construction proposed by the employer.

First of all, if the Legislature intended the Law to cover only diseases to which the employee had been exposed for 60 days or more, it would more logically have included this requirement in 39 M.R.S.A. § 183, the definition of "occupational disease". According to the employer's construction, the term "occupational disease" in section 183 is further modified by the last sentence in section 186 and a proper definition is found by beginning in section

183, "a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade", and then skipping sections 184 and 185 to the last sentence of section 186 to complete the definition by adding, "to whose hazards the employee was exposed for 60 days or more". We are reluctant to attribute such involute structure to a legislative enactment.

The Law does, moreover, provide for specific periods of exposure for particular diseases. The selection of special limitations for particular diseases argues against the employer's claim of a blanket exposure requirement for all occupational diseases. Sections 194 and 194–A respectively require that disability or death from Silicosis or Asbestosis will not be deemed due to the nature of any occupation unless the employee was ·exposed to the inhalation of harmful dust for a period of at least two years. Section 193(9) limits the employer's liability for occupational deafness to situations where the employee has been exposed to harmful noise for at least 90 days. The language of these sections clearly states that they are, with respect to particular diseases, performing the office claimed by the employer for the somewhat crepuscular language of section 186. If the employer's construction were correct we should expect section 186 to express its intent with equal clarity as well as contain some cross-reference to that section or a reference in section 186 to these specific limitations. None, however, appear. The placing of unusual limits on compensation for these diseases is not all uncommon and represents a legislative response to the conditions of particular industries. 1A A. Larson, The Law of Workman's Compensation § 41.80 (1973). Yet, as noted below, the requirement of a general, "boiler-plate" limitation on exposure to all occupational disease under all conditions would be an anomaly in Occupational Disease Law.

In the second place, the structure of section 186 itself is inconsistent with the construction urged by the employer. The overall purpose of section 186 is not to provide a remedy for the employee who succumbs to an occupational disease but to establish the procedural means by which that remedy is effected. Thus, the first sentence of section 186 determines the time at which compensation accrues to an employee for an occupational disease. The second determines which employer shall be liable for the compensation where the employee has suffered multiple exposures to an occupational disease while in the employment of a series of employers. The third sentence establishes guidelines for determining the amount of compensation due the employee from the employer to whom liability has attached by virtue of the second sentence (". . . compensation shall be based upon the average wages of the employee when last so exposed under *such* employer . . ." (emphasis added)). Sentence one, then, determines the date from which compensation begins to run. Sentences two and three, by avoiding the difficulty of trying to shuffle through many months and many employers to affix liability to a specific defendant, solve the problem of who shall pay that compensation in certain narrowly circumscribed situations by addressing the situation of the transient employee who moves from job to job. The pattern of this section is continued into the final sentence, which further addresses the problem of having to choose among successive employers:

"The only employer and insurance carrier liable shall be the last employer in whose employment the employee was last injuriously exposed to the hazards of the disease during a period of 60 days or more, and the insurance carrier, if any, on the risk when the employee was last so exposed, under such employer."

This final sentence should most logically be construed as further refining the liability of successive employers by establishing a mandatory period of exposure as a precondition of liability. Thus the employee

**611**

whose disease becomes compensable as provided in sentence one may at that time have just entered the service of a new employer or may even be employed in a trade in which he is no longer exposed to that disease. In the event of successive employers, the Legislature most probably demanded stronger evidence of the association between the responsible employer's business and the employee's present illness. A mandatory period of exposure apparently was expected to provide that increased certainty.

Finally, we note that the requirement that no disease is compensable unless the employee has been exposed to it for a certain time period is clearly against the trend of the law in most jurisdictions.

"Moreover, the element of gradualness, so heavily stressed in definitions contrived to distinguish accident, loses its importance when the sole question is the inclusiveness of an occupational disease statute. If the inherent conditions of employment produce outright infection, for example, it may be treated as an occupational disease although the process is much more sudden than that described in the older definitions." 1A A. Larson, Workmen's Compensation Law, § 41.40 7–279 (1973).

Thus, the sudden transmission of tuberculosis from one employee to another through the enforced use of instruments peculiar to the occupation (*Hovancik v. General Aniline & Film Corp.*, 8 A.D.2d 171, 187 N.Y.S.2d 28 (1959)) or tissue loss due to the entry of a job related chemical through fresh abrasions on the employee's hands (*Shore v. Pacific Employer's Ins. Co.*, 102 Ga.App. 431, 116 S.E.2d 526 (1960)) were held to be compensable occupational diseases.

We therefore conclude that 39 M.R.S.A. § 186 does not require that the claimant prove that she was exposed to tuberculosis for a period of 60 days before her employer becomes liable for her compensation. The language to which the employer points does not here apply to him or to his employee, Carolyn Russell, but refers to the allocation of liability among successive employers, a situation not in issue.

In so finding, we imply our concurrence with the Commissioner's conclusion that the claimant's disease is within the scope of the Occupational Disease Law. At the time here relevant, section 183 provided:

"Whenever used in this law, the term 'occupational disease' shall be construed to mean only a disease set forth in section 193 which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment and which arises out of and in the course of employment."

39 M.R.S.A. § 193 originally provided an exclusive schedule of compensable occupational diseases. This was repealed in 1967 and replaced by the general definition quoted above. We believe that this repeal was intended to liberalize the Occupational Disease Law by moving from preconceived categories of diseases typically associated with certain types of employment to the more expansive requirement that the disease result from an exposure occasioned by employment where the risks of exposure are peculiar to that employment. Such a shift is fully consistent with the broad remedial purpose of the Law. *See Davis v. Bath Iron Works Corp.*, Me., 338 A.2d 146 (1975).

The requirement that the disease be "characteristic of or peculiar to" the occupation of the claimant precludes coverage of diseases contracted merely because the employee was on the job. For example, it is clear that the Law was not intended to extend to an employee in a shoe factory who contracts pneumonia simply by standing next to an infected co-worker. In that example, the employee's exposure to the disease would have occurred regardless of the nature of the occupation in which he was employed. To be within the pur-

view of the Law, the disease must be so distinctively associated with the employee's occupation that there is a direct causal connection between the duties of the employment and the disease contracted.

■ The present case may represent the outer limits of the Law's applicability, but the Law is applicable nevertheless. Unlike almost all other occupations, the claimant's duties did not expose her to the hazards of a disease but to disease itself. It is inherent in the claimant's occupation as a nurse's aide that she render care to the bodies of ill people, some of whom require such care because they are suffering from infectious diseases. We see no significant distinction between the situation of the nurse in a tuberculosis sanitarium whose duties expose her to one infectious disease and that of the nurse in a general hospital whose duties may expose her to many. If Mr. Talamine happened to be the only patient with tuberculosis to whom the claimant's duties required her to render intimate professional care, the fact would still remain that the risks of exposure to a wide spectrum of infectious diseases—including, occasionally, tuberculosis—is peculiar to her employment. The probability of her exposure to this specific disease is not an element that she must show to recover under the Law. The Law does not require frequent or typical exposure but only that there be a direct causal connection between the occupation and the disease. It is sufficient that she show that her contracting the disease, no matter how rare, or unusual, was occasioned by conditions characteristic of and peculiar to her job. We believe that she has done so. *See Hayes v. St. Mary's Hospital*, 285 App.Div. 914, 137 N.Y.S.2d 409 (1955); *Otten v. State*, 229 Minn. 488, 40 N.W.2d 81 (1949) (tuberculosis contracted from patients held to be an occupational disease for nurses).

### The Commissioner's Finding of Causation

The Commissioner found as a matter of fact that the claimant's contact with Elio Talamine was "more probable than not" the medical cause of her contracting tuberculosis. The medical witness, Dr. Martin, never testified that contact with Mr. Talamine was the cause of her infection, only that intimacy with an infected person increases another's susceptibility to the disease. The employer claims that the absence of direct medical testimony on the cause of the claimant's disease renders the Commissioner's findings wholly speculative and without any foundation in fact. We disagree.

■ The Commissioner's findings of fact are final if they are supported by competent evidence and the reasonable inferences which may be drawn therefrom. *Crosby v. Grandview Nursing Home,* Me., 290 A.2d 375 (1972). It was not necessary for the medical expert to testify that the claimant's tuberculosis was caused by her exposure to the infected patient. Conclusions relating to medical cause may be drawn from the proven facts and inferences logically drawn therefrom even though they lack the support of direct medical opinion. *Matthews v. R. T. Allen & Sons, Inc.,* Me., 266 A.2d 240 (1970). Here, the evidence showed that the claimant came in intimate contact with a patient suffering from tuberculosis; that susceptibility to tuberculosis increases with contact; that tuberculosis is a communicable disease with an incubation period varying, in the doctor's words, "from a month to ten years or longer"; that one year and three months after exposure to the patient, the claimant developed tuberculosis. We cannot say the Commissioner's findings were not supported by the evidence or that his conclusions did not have a rational basis. *See* 39 M.R.S.A. § 99.

The entry will be:

Appeal denied.

It is further ordered that the appellants pay to the appellee $550 for her counsel fees, plus her actual reasonable out-of-pocket expenses of this appeal.

All Justices concurring.