ELIZABETH HANSEN *v.* ROBERT GORDON ET AL.
(14237)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BERDON, Js.

Argued November 6, 1991—decision released January 28, 1992

*David A. Kelly,* with whom was *Jeremy Booty,* for the appellants (defendants).

*Jason M. Dodge,* for the appellee (plaintiff).

BERDON, J. This appeal, arising under the Workers' Compensation Act, General Statutes § 31-275 et seq., raises the following two issues: (1) whether hepatitis type B virus (HBV) is an occupational disease for a dental hygienist within the meaning of the act when the disease arises out of and in the course of her employment; and, if so, (2) whether a dental hygienist who has suffered no physical impairment or symptoms of the disease can be found to have sustained partial incapacity within the meaning of the act as a result of being a carrier of the disease.

. The plaintiff, Elizabeth Hansen (claimant), was employed by Robert Gordon, a dentist. The compensation review division affirmed an award of benefits from the workers' compensation commissioner to the claimant. Gordon and his liability insurer under the Workers' Compensation Act, St. Paul Insurance Company (collectively, employer), took this appeal to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023. We conclude that, under the facts in this case, HBV is compensable as an occupational disease under the Workers' Compensation Act, and that the claimant sustained a partial incapacity as a result of being a carrier of the disease. Accordingly, we affirm the decision of the compensation review division.

The employer, on appeal, concedes that the facts the commissioner found must stand. "[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citations omitted.) *Adzima* v. *UAC/Norden Division*, 177 Conn. 107, 117–18, 411 A.2d 924 (1979).

We thus decide the issues in this case on the basis of the following facts found and conclusions drawn by the commissioner. The claimant had been employed by Gordon as a dental hygienist since 1980. In 1984, the claimant, her coworkers and Gordon began to wear masks and gloves due to their increased awareness of infection from communicable diseases. In 1984 and 1985, the claimant and Gordon received precautionary vaccinations against hepatitis. During March, 1986, the claimant's husband was diagnosed as having HBV. As a result of this diagnosis, the claimant was tested and diagnosed as being a carrier of HBV. On March 13, 1986, the claimant ceased employment as a dental hygienist when she and Gordon agreed that her condition posed a threat to patients.

Hepatitis is an inflammation of the liver and is usually manifested by jaundice. HBV is a contagious disease that is widespread in the community and is most commonly acquired through bodily secretions, such as blood, serum, semen and saliva. It can be transmitted through blood transfusions, sexual intercourse, or other direct contact with a contagious person in which bodily secretions are involved. Dental hygienists and other health care providers, whose work may subject them to contact with blood and other secretions, are at particular risk for contracting the disease. The commissioner determined that "[b]ased on all the evidence

presented it is more likely than not that Claimant's infection with hepatitis arose out of and in the course of her employment."

In viewing the issues raised in this case, we are mindful of the remedial purposes of the Workers' Compensation Act and " 'that it should be broadly construed to accomplish its humanitarian purpose.' " *Ash* v. *New Milford,* 207 Conn. 665, 672, 541 A.2d 1233 (1988), quoting *Adzima* v. *UAC/Norden Division,* supra, 117. Nevertheless, we also recognize that the legislature did not intend to impose upon the employer liability for diseases contracted outside the work place, or to transform the Workers' Compensation Act into a general health and benefit insurance program that would compensate an employee for all contagious diseases.

## I

A disease is compensable as an "injury"; General Statutes § 31-275 (8); (1) if it arises out of and in the course of the employment; General Statutes § 31-275 (12); and (2) if it is an occupational disease that is "peculiar to the occupation in which the employee was engaged" and "due to causes in excess of the ordinary hazards of employment as such." General Statutes § 31-275 (11).[1]

---

[1] General Statutes § 31-275 (8) provides: " 'Personal injury', or 'injury', as the same is used in this chapter, shall be construed to include, in addition to accidental injury which may be definitely located as to the time when and the place where the accident occurred, an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease as herein defined."

General Statutes § 31-275 (12) provides in pertinent part: " 'Arising out of and in the course of his employment' means . . . an occupational disease of such employee originating while he has been engaged in the line of his duty in the business or affairs of the employer upon the employer's premises . . . ."

General Statutes § 31-275 (11) provides: " 'Occupational disease' includes any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such

The employer does not dispute the commissioner's conclusion that "it is more likely than not that Claimant's infection with hepatitis arose out of and in the course of her employment." The first requirement has therefore been met. In *Fair* v. *People's Savings Bank,* 207 Conn. 535, 539–41, 542 A.2d 1118 (1988), we quoted with approval the following: " '[I]n determining whether a particular injury arose out of and in the course of employment, the . . . Commissioner must necessarily draw an inference from what he has found to be the basic facts. The propriety of that inference, of course, is vital to the validity of the order subsequently entered. But the scope of judicial review of that inference is sharply limited by the . . . statutory provisions. If supported by the evidence and not inconsistent with the law, the . . . Commissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive.' . . . *Cardillo* v. *Liberty Mutual Co.,* 330 U.S. 469, 477–78, 67 S. Ct. 801, 91 L. Ed. 1028 (1947)."

The employer claims on appeal, however, that the claimant has not satisfied her burden of proving that HBV falls within the definition of an occupational disease. The employer argues that for the disease to be classified as "occupational" under the Workers' Compensation Act, it must be one where "the risk of acquiring the ailment arises only during employment." At oral argument, the employer further embellished this argument by claiming that contagious diseases present in the community at large must be excluded from coverage under the Workers' Compensation Act. These exclusions are much too broad and find no support in our prior cases.

and includes any disease due to or attributable to exposure to or contact with any radioactive material by an employee in the course of his employment."

Section 31-275 was amended by Public Acts 1991, No. 91-339, §§ 1 and 55. That amendment does not affect the appeal here.

Shortly after the Workers' Compensation Act was amended to its present pertinent language,[2] we had occasion to interpret the definition of "occupational disease" as being "a disease which is a natural incident of a particular occupation, and must attach to that occupation a hazard that distinguishes it from the usual run of occupations and is in excess of that attending employment in general." *Glodenis* v. *American Brass Co.*, 118 Conn. 29, 40–41, 170 A. 146 (1934). In making this determination, we analyzed the statutory language requiring the disease to be "peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such." General Statutes § 31-275 (11). We concluded that this "does not require that a disease, to be within the definition, should be one which arises solely

[2] In *Grady* v. *St. Mary's Hospital*, 179 Conn. 662, 668 n.8, 427 A.2d 842 (1980), we set forth the evolution of occupational disease under the compensation act as follows: "In *Linnane* v. *Aetna Brewing Co.*, 91 Conn. 158, 162, 99 A. 507 (1916), this court held that occupational diseases were not compensable under the workmen's compensation statute. There we said that ' "personal injury" within the meaning of the Act involves both an accident and a bodily injury, as distinguished from a disease.' By the time *Hines* v. *Norwalk Lock Co.*, 100 Conn. 533, 124 A. 17 (1924), was decided, however, the legislature had amended the act to include in the definition of injury any disease which is due to causes peculiar to the occupation and which is not of a contagious, communicable or mental nature. The following year, the court broadened the definition of personal injuries compensable under the act on its own initiative by including contagious diseases. *De la Pena* v. *Jackson Stone Co.*, 103 Conn. 93, 130 A. 89 (1925). But the legislative response was to tighten the definition of a compensable personal injury 'to include *only* accidental injury which may be definitely located as to the time when and the place where the accident occurred, and occupational disease as herein defined.' Public Acts 1927, c. 307 § 7. (Emphasis added.) In *Madeo* v. *I. Dibner & Brother, Inc.*, 121 Conn. 664, 666–67, 186 A. 616 (1936), this court recognized that '[t]he purpose of the amendment was to limit the scope of the act as it applied to diseases and to include in it only certain types which occupied a definite relationship to the occupation of the employee.' The only substantive change in the definition since then has been the addition of the second category of compensable personal injury which is immaterial to this case because the plaintiff does not claim it."

out of the particular kind of employment in which the employee is engaged, nor that it should be due to causes in excess of the ordinary hazards of that particular kind of employment. Otherwise the definition would exclude most diseases . . . . The phrase 'peculiar to the occupation' is not here used in the sense that the disease must be one which originates exclusively from the particular kind of employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations; see Oxford Dictionary; Funk & Wagnalls Dictionary; and the phrase 'employment as such' means employment in general." *Glodenis* v. *American Brass Co.*, supra, 40.

We have never held that a disease must be of the type that can be contracted solely in the work place, either in a general sense or from the claimant's particular type of employment. "When we referred . . . to disease as being a 'natural' incident of the employment, we used that word in the sense that we have used it in defining proximate causation . . . it imports not a forward look to determine what risks should have been foreseen, but a tracing back from the results to the circumstances out of which the disease sprang." (Citations omitted.) *LeLenko* v. *Wilson H. Lee Co.*, 128 Conn. 499, 505, 24 A.2d 253 (1942). Therefore, the requirement that the disease be "peculiar to the occupation" and "in excess of the ordinary hazards of employment," refers to those diseases in which there is a causal connection between the duties of the employment and the disease contracted by the employee. In other words, it need not be unique to the occupation of the employee or to the work place; it need merely be "so distinctively associated with the employee's occupation that there is a direct causal connection between the duties of the employment and the disease contracted." *Russell* v.

*Camden Community Hospital,* 359 A.2d 607, 611–12 (Me. 1976); see also *Hendrix* v. *Linn-Corriher Corporation,* 317 N.C. 179, 345 S.E.2d 374 (1986) (textile worker who developed lung disease as a result of his many years of exposure to cotton dust could recover for an occupational disease under the Workers' Compensation Act); *Booker* v. *Duke Medical Center,* 297 N.C. 458, 472–74, 256 S.E.2d 189 (1979) (lab technician contracted serum hepatitis through contact with tainted fluids in the laboratory; upon his death, his decedents were compensated under the occupational disease provision of the Workers' Compensation Act).

We further note that since 1982, the workers' compensation review division has construed the statutory definition of occupational diseases simply to refer to concepts of proximate causation. *Cortes* v. *Allegheny Ludlum Steel Corporation,* 1 Conn. Workers' Comp. Rev. Op. 173, 181–82, 61 CRD-3-81 (1982). We afford great deference to the construction by the review division that is in charge of the enforcement of the compensation act. See *Griggs* v. *Duke Power Co.,* 401 U.S. 424, 433, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971); *Dugas* v. *Lumbermens Mutual Casualty Co.,* 217 Conn. 631, 643, 587 A.2d 415 (1991). Moreover, although the legislature recently amended § 31-275 of the Workers' Compensation Act; Public Acts 1991, No. 91-339, § 1; it left intact the compensation review division's construction of the definition of occupational diseases. "[T]he inference of legislative concurrence with the agency's interpretation [is] to be drawn from legislative silence concerning that interpretation, especially where the legislature makes unrelated amendments in the same statute." *Connecticut Light & Power Co.* v. *Public Utilities Control Authority,* 176 Conn. 191, 198, 405 A.2d 638 (1978).

In the present case, the facts found by the commissioner surely fulfill the requirements for an occupational

disease. The commissioner found, on the basis of all the medical testimony, that dental hygienists are at a particular risk of contracting HBV because of their contact with blood and other secretions.[3] Although HBV is contagious, and can be transmitted through means outside the work place, for dental hygienists it is a disease so distinctly associated with their profession that the necessary causal connection is present.

The employer's reliance on *Madeo* v. *I. Dibner & Brother, Inc.,* 121 Conn. 664, 186 A. 616 (1936), is misplaced. In *Madeo,* there was no evidence of any causal connection between the employee's work as a seamstress and the disease of tuberculosis for which she sought compensation. We pointed out in *Madeo* that an occupational disease "does not include a disease which results from the peculiar conditions surrounding the employment of the claimant in a kind of work which would not from its nature be more likely to cause it than would other kinds of employment carried on under the same conditions." Id., 667. This distinction is put in sharper focus when compared with *Russell* v. *Camden Community Hospital,* supra, in which the Supreme Judicial Court of Maine affirmed the award of workers' compensation benefits to a nurse's aide whose infection with tuberculosis was more probably

---

[3] Avrum H. Blitzer, the claimant's treating physician, Klaus Nuki, a professor at the University of Connecticut dental school, and Richard Slater, the employer's expert, a physician specializing in internal medicine and gastroenterology, all testified that dental professionals are at an increased risk to contract HBV because they are exposed to blood and serum on a daily basis as well as to sharp instruments, which can puncture the skin of dental professionals. This is further supported by the Occupational Safety and Health Administration's guidelines, which list dentists and other dental workers at risk for contracting HBV because their work may involve "exposure to blood or other potentially infectious materials." Compliance Assistance Guideline for the February 27, 1990, OSHA Instruction CPL 2-2.44B Enforcement Procedures for Occupational Exposure to Hepatitis B Virus and Human Immunodeficiency Virus, p. 3.

than not a result of her work with an infected patient. The court stated that the occupational disease law "does not require frequent or typical exposure [to the disease] but only that there be a direct causal connection between the occupation and the disease. It is sufficient that she show that her contracting the disease, no matter how rare, or unusual, was occasioned by conditions characteristic of and peculiar to her job." Id., 612. In the present case, all the expert testimony revealed that dental professionals are at an increased risk of contracting HBV because of their exposure to bodily secretions on a daily basis, as well as their use of sharp instruments that can puncture their skin, thereby allowing HBV an entree into their bodies.

Lastly, the employer looks, for support for his argument, to General Statutes § 5-142 (b), which provides state employees with benefits for communicable diseases contracted "while in the employ of the state and during the performance of such employee's duties." The employer argues that if communicable diseases were covered as occupational diseases pursuant to the Workers' Compensation Act, then § 5-142 (b) would be superfluous. The simple answer to its argument is that the legislature obviously wanted to ease the burden of proof that is required by a state employee under the Workers' Compensation Act, thereby affording state employees an enhanced benefit pursuant to § 5-142 (b). See *Lucarelli* v. *State*, 16 Conn. App. 65, 68, 546 A.2d 940 (1988).

Accordingly, because the claimant has proven that HBV arose out of and in the course of her employment, and that HBV is an occupational disease for a dental hygienist, she has sustained her burden of proving that the disease is compensable under the Workers' Compensation Act.

## II

The employer's second claim is that the claimant is not entitled to compensation because she does not have a "partial incapacity." The employer argues that because the claimant concurred with Gordon that she should not continue her employment as a dental hygienist, and because she suffers no symptoms of the disease, she has not sustained a partial incapacity. We disagree with the employer.

General Statutes § 31-308 (a) provides in pertinent part that "[i]f any injury for which compensation is provided under the provisions of this chapter results in partial incapacity, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury and the amount he is able to earn after such injury . . . ."[4]

Section 31-308 (a) makes clear that if the injury results in some incapacity leaving the claimant able to perform some employment, but unable fully to perform his or her customary work, the claimant is entitled to benefits under its provisions. We have held that a partial incapacity means a partial inability to work "as distinguished from the loss or loss of use of a member of the body," which results in an impairment affecting the use or function of the body. *Panico* v. *Sperry Engineering Co.*, 113 Conn. 707, 710, 156 A. 802 (1931).

We first note that the incapacity must result from a causal connection between the injury and the employment; *Santini* v. *Levin*, 110 Conn. 248, 252, 147 A. 680 (1929); and that the right to benefits does not arise

---

[4] General Statutes § 31-308 was amended by Public Acts 1991, No. 91-339, §§ 28 and 55. That amendment does not affect the appeal here.

merely because of factors that are extrinsic to the physical status of the employee. *Clark* v. *Henry & Wright Mfg. Co.*, 136 Conn. 514, 517–18, 72 A.2d 489 (1950).

In making our determination as to whether the claimant is entitled to compensation under the Workers' Compensation Act for partial incapacity, we again stress that the commissioner is the trier of the facts. The conclusions drawn by him or her from those facts must stand unless successfully challenged upon one of the grounds enumerated in *Adzima* v. *UAC/Norden Division,* supra.

With respect to this issue, the commissioner found that the claimant is a carrier of the disease but suffers no physical impairment. She has not worked as a hygienist since March, 1986, when she and Gordon agreed "that her condition posed a threat to patients." The commissioner concluded that the "[c]laimant has not been and is not employable as a dental hygienist and has suffered a diminution of her earning capacity." Not only is this latter conclusion supported by the testimony of the employer's expert,[5] but it is also supported by Gordon himself. It was Gordon who concluded that because the claimant was a carrier of HBV, she should not continue to work as a dental hygienist because if she did, patients would be placed at risk of contracting the disease. The findings and conclusion of the commissioner support an award of

---

[5] The employer's expert testified: "If . . . a number of cases were traced back to [the dentist] as having been spread, it might be that his license to practice would be restricted or limited. From a practical point of view in terms of whether I would recommend that someone who is a Hepatitis B [carrier] go into that field, I would not recommend that. I think it does put patients at some exposure even though with proper gloves and proper care you could work, and I think from my experience dealing with dentists, quite honestly, if the dentist were hiring someone and knew that that person was a Hepatitis B carrier, he would be less inclined to hire someone."

compensation for partial incapacity under the Workers' Compensation Act. It is irrelevant that the claimant agreed to cease employment to protect patients and that she suffers no symptoms of the disease. As the compensation review division concluded, "the disease itself is an impairment in capacity [because] it disabled claimant from employment as a dental hygienist and therefore caused her to lose earnings."

The decision of the workers' compensation review division is affirmed.

In this opinion the other justices concurred.