619 A.2d 319

**J. Mark KREIDER and Theresa L. Kreider, Ind. and as H/W and on Behalf of Minor Son, Kenneth Mark Kreider**

**v.**

**Burton L. WELLENBACH, M.D., David Goodner, M.D., Estate of Leon A. Peris, M.D., Benjamin Kendall, M.D., Sandra M. Wolf, M.D., Joseph Z. Grover, M.D., Ind. and Wellenbach, Peris, Kendall, Goodner & Grover, P.C.**

**Appeal of: David GOODNER, M.D., Estate of Leon A. Peris, M.D., Benjamin Kendall, M.D., and Sandra M. Wolf, M.D.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1992.

Filed Jan. 13, 1993.

Donald N. Camhi, Philadelphia, for appellants.

Daniel L. Thistle, Philadelphia, for appellees.

Before WIEAND, OLSZEWSKI and HOFFMAN, JJ.

OLSZEWSKI, Judge.

This is an appeal from the Honorable Lawrence Prattis' order denying defendants' motion for post-trial relief. After a lengthy medical malpractice trial, the judge ordered a new trial on the ground that the jury could not reach a unanimous verdict concerning defendants' negligence. The defendants argue on appeal that the judge should have molded the jury verdict to conform to the jurors' expressed intentions.[1]  We

1. Defendants raise one issue on this appeal, in which they argue that the trial judge should have "molded," "reinstated," and "entered" judgment in accord with the intention of the jury.  Since all three categorizations seek the same relief—judgment in defendants' favor—and offer the same rationale, we limit our discussion to whether the trial judge should have "molded" the verdict.  Our rationale applies equally to defendants' claims that the judge should have "reinstated" or "entered" the verdict.

find that the jury never rendered a verdict. There being no verdict, there was no verdict to mold. We therefore affirm.

Mrs. Kreider, a named plaintiff, suffers from lupus, a serious medical condition. After she became pregnant, her family doctor advised her that the condition, although in remission, might cause complications in the pregnancy. She sought defendants' treatment. The defendants are members of a medical group which specializes in complicated pregnancies. Defendants treated Mrs. Kreider regularly; all tests and examinations indicated that the pregnancy was progressing without complications. When Mrs. Kreider went into labor, however, she began to suffer. The doctors performed a cesarean section to deliver the child. Mrs. Kreider's child was born with deformities and unfortunately died within twenty-four hours.

The Kreiders instituted this lawsuit against the doctors asserting that they were negligent in rendering the pre-natal care. The case went to trial before Judge Prattis and a jury. The jury's task was to determine whether the doctors were negligent. Specifically, the jury had to decide: 1) whether the doctors provided pre-natal care that conformed to the standard of care exercised by other specialists in the same medical community, and 2) if they did not, whether their treatment was the legal cause, or a "substantial factor" in causing plaintiffs' injuries. After each side presented its case, the judge submitted a list of special interrogatories to the jury. The interrogatories provided:

## VERDICT SLIP

1—Was there negligence on the part of any one of the defendant doctors?

[ ] Yes

[ ] No

2—If your answer to question 1 is "yes," was that negligence a substantial factor in causing harm to the plaintiffs?

[ ] Yes

[ ] No

Exhibit C–6, dated 9/24/91.[2]

After the jury began deliberating, the foreperson submitted two written questions to the judge. These questions asked whether the jury had to attain seven "yes" votes to determine that the doctors were negligent and whether the jury had to attain seven "no" votes to determine that the doctors were not negligent. The Court responded in the affirmative to each question.[3] After the jury informed the judge that it was at an impasse regarding whether the doctors were negligent, the judge asked the jurors to "think about it overnight," and continue deliberations the next morning. N.T. 9/23/91, p. 166.

The next morning, the jury returned the verdict slip. The following discussion between the court and counsel for both parties ensued:

The Court: Counsel, I have the jury's verdict slip. It says as follows: "First question, was there negligence on the part of the defendant doctors. Three say yes. Five say no.

Question number two, if your answer to question number one was yes was that negligence a substantial factor in causing the harm to the plaintiff? One says yes, seven say no. What do you want to do? It's not a verdict.

Mr. Cahmi [defense counsel]: Oh, Judge.

The Court: Question two is really not to be arrived at until they arrive at a seven to one vote on question number one. At most this is a mistrial.

Mr. Cahmi: I will respectfully disagree and tell you why. Let's assume that we have a hung jury on question number one. You were to declare a mistrial. We know that in

---

**2.** The slip also provided a third question, which asked the jury to determine plaintiffs' damages. The jury was to respond to these questions only if they responded "yes" to the first two questions. That question is not relevant here.

**3.** 42 Pa.C.S.A. § 5104(b) provides: "In any civil case a verdict rendered by at least five-sixths of the jury shall be the verdict of the jury and shall have the same effect as a unanimous verdict of the jury." Thus, seven out of eight jurors in agreement is sufficient to render a verdict. The trial judge specifically informed the jury of this. N.T. 9/23/91, pp. 154–155.

order for the plaintiff to succeed in this case they must get seven to say yes to question number two. It's obvious that they haven't done it and this is as good as any verdict as we can get.

The Court: Because in the process of discussing question number one and arriving at a verdict on question number one they could change their mind.

Mr. Cahmi: They've already discussed it and they've come to a conclusion on substantial factor and there was none.

N.T. 9/24/91, pp. 3–4.

Defense counsel argued strenuously that the jury had reached a final verdict. Plaintiffs' counsel argued that the jury was required to answer the questions as asked. Since there was not a unanimous answer to the first question, it was improper for the jury to consider question number two. The trial judge, concerned that the jury reach a unanimous decision on both questions, instructed the jury as follows:

The Court: I gather there has been no change in the respective positions of the parties since yesterday afternoon?

Foreperson: That's right, your Honor.

The Court: Would it help you in reaching a decision because this is not a decision on question number one. It has to be seven to one one way or the other. You have the time. If further discussion of the exhibits and the testimony would be helpful, I am certainly willing to allow that. It is always preferable to have agreement on both questions. Would such further time be helpful? What's the sense of the group on that? I don't want to know who is voting which way. I want to know what the foreperson thinks.

Foreperson: I think that our positions are pretty set on the first question.

The Court: If I sent you to lunch. It's now 12:00 just about and let you come back at say 2:00 and then determine whether there is any possibility of your discussing and coming to further agreement on question one, would that be helpful?

Foreperson: Yes.

N.T. 9/24/91, pp. 11–13.

The jurors deliberated for about an hour. They returned the verdict slip which indicated that they had reached an impasse on both questions. The foreperson and all members of the jury stated orally that the impasse would not be resolved, regardless of how much longer they deliberated. *Id.* at 22–25. The verdict slip and jury poll indicated that the final vote on each question was six to two. The trial judge noted the impasse and upon motion by plaintiffs' counsel granted a new trial. The defendants filed a motion for post-trial relief which was denied. This appeal followed.

Fortunately, the resolution of this intricate symphony is not nearly so long as its crescendo. Defendants argue that the trial judge should have molded the jury's verdict to effectuate the jury's intent. The jury's intent, defendants argue, is clear because the first jury verdict indicated that there was a seven to one vote regarding causation. Thus, a jury's decision on the question of whether the doctors were negligent is moot because the jury decided that in any event, the doctors' conduct did not cause the plaintiff's harm. While this argument has allure, we cannot agree.

Defendants' argument that the trial judge should have molded the verdict begs the question of whether the jury ever reached a verdict. Indeed, if the jury never reaches a verdict, there is nothing for the trial court to mold. *Oblon v. Ludlow-Fourth Corp.,* 406 Pa.Super. 591, 595 A.2d 62 (1991), *alloc. granted,* 602 A.2d 560 (1992); *Bowie v. Shelton,* 214 Pa.Super. 107, 251 A.2d 667 (1969). We find that the jury in this case never rendered a verdict.

We have recently affirmed the proposition that when five-sixths of the members of a jury cannot agree, no verdict has been reached:

It has long been the rule in Pennsylvania that the only verdict is that announced by the jury and if at that time any juror disagrees, with or without poll, before the verdict is recorded, then there is no verdict.

*Oblon, supra,* 406 Pa.Super. at 597, 595 A.2d at 65; *Barefoot v. Penn Central Trans. Co.,* 226 Pa.Super. 558, 559, 323 A.2d 271, 272 (1974).

At issue in *Barefoot* was whether the jury rendered a verdict when a juror agreed with his peers in the jury room, but renounced his agreement during the jury poll. The trial court entered a verdict, stating: "once they [the jury] agree to a verdict and that is unanimous then that's it. They don't agree to it and then they come down here and say they don't agree to it. The verdict will stand as recorded ..." *Id.* at 560, 323 A.2d at 272. We reversed the trial court, stating the general rule and adding:

> The written jury verdict, prepared in the jury room and handed to the clerk, when it is objected to as in this case, is no part of the record and has absolutely no significance whatsoever as the verdict of the jury. Thus, it is generally accepted that a juror, when polled in open court, has the right to dissent from a verdict which he has agreed to in the jury room.

*Id.* (citations omitted).

In *Oblon, supra,* the jury submitted a verdict slip which appeared unanimous. During the jury poll, however, two jurors disagreed with the verdict as rendered. The trial judge refused to enter the verdict. Oblon's counsel obtained *ex parte* affidavits from the dissenting jurors which apparently evidenced a consensus. The trial judge refused to consider the affidavits and rejected a motion to mold the verdict. We affirmed and held that there was no verdict, since "the verdict as uttered, is the sole embodiment of the jury's act." *Oblon, supra,* 406 Pa.Super. at 598, 595 A.2d at 66; *Havranek v. Pittsburgh,* 344 Pa. 375, 25 A.2d 703 (1942). We also noted in *Oblon* that since there was no verdict, the trial court would have to manufacture one by considering the affidavits of the jurors. This course of action would be improper. The practice of considering such unsworn statements is "highly unethical and improper." *Id.*

We are not persuaded that this case warrants deviation from the well-established principles espoused above. Here,

the jury returned the verdict slip to the judge prematurely. The trial judge, unsatisfied that the jury had not reached a conclusive answer to the question regarding defendants' negligence, asked them to deliberate for another hour. This request was entirely proper. The trial judge may admonish the jury on the importance of unanimously agreeing on a verdict. *Hickman v. Fruehauf,* 386 Pa.Super. 455, 563 A.2d 155 (1989). When the jury returned at an impasse, they were polled. The result of the poll indicated that the jury was split 6–2 on the issue of whether defendants were negligent. They also split on whether the doctors' conduct was a substantial factor in causing plaintiffs' harm—six jurors felt their conduct was not a substantial factor and two felt it was. This is not a unanimous verdict. *See Oblon, supra;* 42 Pa.C.S.A. § 5104(b).

The original verdict slip's notation that seven jurors felt that defendants' conduct was not a substantial factor of the plaintiffs' harm is irrelevant. First, *Barefoot* and *Oblon* stand for the simple proposition that the contents of a verdict slip have absolutely no bearing on the final verdict rendered by a jury. The only verdict is the jury's oral pronouncement. In this case, the jury poll indicated that only six, not seven, jurors agreed that defendants' conduct did not cause plaintiffs' harm. Second, the fact that seven jurors agreed in the jury room does not guarantee there would be no dissenters during the poll. This is true if the poll would have been taken at the instant the judge read the original slip to defense counsel, or waited for two hours. Third, in order for the trial judge to grant defendants' wishes to "reinstate," "mold," or "enter" the original verdict, we would be asking the trial court to manufacture a verdict, not mold one. This is a practice which we decried in *Oblon,* and will refuse to sanction here.

The order denying defendants' motion for post-trial relief is affirmed. The matter will proceed to trial.

Judgment affirmed.